Tom C. King v. State of Texas ex rel. Louis M. Herbert.

Decided November 6, 1902.

**Election—Ballots—Identification Mark Omitted.**

Where city ordinances, enacted under a special city charter, provided that at a city election all ballots should be indorsed "official ballot," together with the name of the city secretary and polling place, on the outside, and that ballots not so indorsed should not be counted, and also that the ballot handed to the voter should be marked with the initials or private mark of the officer delivering the same, but did not provide that unless a ballot was so marked it should not be counted, the latter requirement was directory only, and a ballot that had been received and deposited, having the official indorsement first mentioned, but without such private mark or initials, could not be rejected on that account.

Appeal from Jefferson. Tried below before Hon. J. D. Martin.

*W. H. Pope* and *Watts, Chester & Ellison,* for appellant.

*F. J. & R. C. Duff,* for appellee.

GARRETT, Chief Justice.—This was a proceeding in the nature of a quo warranto commenced by the appellee against the appellant for the purpose of trying the right to the office of assessor and collector of taxes of the city of Beaumont. A jury was waived and the cause was submitted to the court with an agreement as to the issue to be tried entered of record. Upon a count the court rejected all the ballots cast in the second ward of the city, which changed the result and declared the relator entitled to the office, and rendered judgment in his favor thereof as well as for the sum of $1450, emoluments of the office received by the respondent.

The agreement upon which the cause was submitted was as follows:.

"It is agreed by and between the parties plaintiff and defendant in the aforesaid cause, as follows, to wit: It is agreed that the ballot boxes shall be brought into court and opened in the presence of the presiding judge thereof, and the parties to this suit, and their respective attorneys; and that the ballots be taken from the boxes one at a time, and unless there be some apparent legal objection on the face of the ballots why each and all of the ballots should not be counted as shown to have been cast, then the ballot shall be counted as it appears to have been cast, and the sum total for the respective candidates shall

determine who was elected. And if a ballot is objected to because of apparent legal objection thereto, then the legality of such ballot or ballots shall be determined from the face of the ballot without any resort to extraneous evidence."

The city of Beaumont is duly incorporated as a city having over 10,000 inhabitants by an act of the Twenty-sixth Legislature entitled "An act to incorporate the city of Beaumont, to grant it a special charter, and to fix its boundaries." Approved May 12, 1899. Spec. Laws 26th Leg., p. 147. An election was held by virtue of the charter and ordinances of said city April 1, 1902, at which the relator and respondent were opposing candidates for the office of assessor and collector of taxes.

The fifth section of the charter of Beaumont, which is declared a public act, contains the following provision: "That the city council shall make all necessary regulations concerning elections, and provide for the examination and counting the returns of elections, and the issuance of proper certificates to the successful candidates." The city council passed ordinances under which the election was held, the following provisions of which are pertinent:

"Chapter 5, article 18. Every ballot shall contain the names of the candidates whose nominations have been duly presented to the city secretary, and not withdrawn, and the names of the offices to be filled, and the question to be voted upon, if any. The names of the candidates for each office shall be arranged under the designation of the office in alphabetical order, according to surnames. There shall be left at the end of the list of the candidates for each particular office as many blank places as there are persons to be elected to such office in which the voter may insert the name of any person, not printed on the ballot, for whom he may desire to vote as a candidate for such office. The ballot shall be printed so as to give each voter a clear opportunity to designate his choice of candidates, and his answers to the questions submitted as hereinafter provided. On the back and outside, when folded, shall be printed, stamped or written, "Official Ballot," followed by the designation of the voting place for which the ballot is prepared, the date of the election, and the name, initials or private mark of the city secretary." Then follows the form of a ticket, including the outside indorsement.

"Article 19. All ballots when thus prepared shall remain in the custody of the city secretary until delivered by him to the presiding officer of the election, and he shall keep a record of the number of ballots prepared by him and furnished at each polling place."

Article 20 provides for the number of ballots that shall be prepared.

"Article 21. The city secretary shall deliver or cause to be delivered to each presiding officer on the morning of the election, and prior to the hour set for the opening of the polls, one hundred and fifty ballots for each fifty votes and fraction, cast at the next preceding election

for mayor in his ward; said ballots shall be previously wrapped and sealed by the city secretary, with a statement on the wrapper of the number of ballots therein, and of the voting place for which intended, and the presiding officer of election shall receipt to him for such package."

"Article 25.  Any person desiring to vote shall present himself at the polls and give his name and residence, giving street and number, if any, to one of the judges of election, who shall write his name down on a list for that purpose, and known as list number one, numbering the applicants seriatim, and announcing such name in a loud and distinct tone of voice.  The voter shall then be subject to challenge in the manner and with the effect now provided by law.  If allowed to vote his name shall be checked off by said judges of election, and his name shall be written down by another judge of election, on a list kept for that purpose and known as list number two, with the number corresponding to list number one.

"The voter shall thereupon be allowed to enter the space within the guard rail and he shall be handed one ballot and only one ballot, which shall be marked on the back with his number and the signature, initials or private mark of the officer delivering him the same.  No more voters shall be admitted within the guard rail at any time than there are voting compartments.  No communication shall be permitted between a voter, after he shall have secured his ballot, and any other person (except with an election officer) until after the voter shall have voted and retired from the reserved space.

"Article 26.  On receipt of his ballot, the voter shall forthwith and without leaving the inclosed space retire to one of the voting compartments and prepare his ballot by running a pencil or ink line through the names of all candidates that he does not wish to vote for, and filling in the names of the candidates of his choice in blank spaces provided therefor, if necessary; and in the case of a question submitted to popular vote, by running a pencil or ink line through the answer he does not desire to give.  Before leaving the voting shelf, the voter shall fold his ballot without displaying the marks he made thereon, and he shall keep the same so folded (the names of the candidates and the voter's marks being on the inside and the official indorsements on the outside) until he has voted.

"Should the voter fail or refuse to so fold his ballot or fail to abstain from disclosing the contents of his ballot by sign, token or otherwise, before the same shall have been voted, his vote shall not be received or counted.  The voter shall vote before leaving the inclosed space, and shall deliver his folded ballot to the officer in charge of the ballot box with the official indorsement uppermost, and the officer in charge shall not permit said vote to be cast if such folded ballot is not an official ballot, and does not bear the genuine indorsement of the city secretary and of the officer who delivered it to the voter, and such offi-

cers shall not unfold such ballot, but if satisfied it is a genuine ballot, he shall at once deposit in the ballot box in the presence of the voter.

"Article 28. No person shall take or remove any ballot from the polling place before the closing of the polls. If a voter spoils a ballot, he may successively obtain others, one at a time, not exceeding three in all, upon returning each spoiled one. The ballots thus returned shall be immediately canceled, and, together with those not distributed to the voters, shall be returned to the city secretary and receipted for by him.

"Article 29. If the voter leaves more names unmarked than there are persons to be elected to an office, or if the judges of election can not determine the voter's choice for any office to be filled or any question submitted to popular vote, his ballot shall not be counted for such office or on such question. No ballots without the official indorsement shall be allowed to be deposited in the ballot box, and none but official ballots provided in accordance with the provisions of this ordinance shall be counted. Ballots not counted shall be marked 'defective,' and delivered to the city secretary as provided in article 28 of this ordinance.

"Article 30. Should a voter be unable to read and write and establish that fact by his oath, two officers of election (of different political complexions, if practicable), to be selected by said voter, shall accompany the voter to the voting shelf; they shall there in a low voice, so as not to be overheard by others, call off the first office on the official ballot to be filled and ask for whom he wants to vote. The voter shall give his answer in a low voice, so as not to be overheard by others, and the officer shall mark his ballot according to his choice, in accordance with article 26 of this ordinance. The officers shall proceed in the same manner for the other officers and questions to be voted on successively. Said ballots so marked and folded shall thereupon be voted by said voter as provided in article 26 of this ordinance. Besides the indorsements such ballots shall also have indorsed on the outside the word 'assisted,' followed by the signature of the assisting officers."

The city was divided by the city council into three wards, and one voting place was established in each ward. Of all the votes polled at said election the respondent King received a majority of 76. Of the votes polled in the First and Third wards the relator Herbert received a majority of 69. None of the ballots in ward No. 2 were indorsed on the back with the signature or initials or private mark of any officer of the election, or of any officer who delivered the ballot to the voter; but each ballot had thereon the voter's number and the following:

"Official Ballot.

"2nd Ward Election, held 1st day of April, 1902.

"Tom C. King, Secretary."

The trial judge held that the ballots in ward No. 2 should not be counted because the same did not have indorsed thereon either the name, initials or private mark of the officer holding said election; and that

the votes cast in ward Nos. 1 and 3 were legal votes and showed that the relator Herbert had been elected by a majority of 69 and was entitled to the office.

In addition to the power of the city council to pass the ordinance regulating the election found in its charter, the general law regulating the manner of holding elections in cities of ten thousand inhabitants or over makes certain provisions with respect thereto and gives authority to the city councils of such cities to "adopt such methods to protect the purity of the ballot in elections held at their municipal elections," not inconsistent with the provisions of the general law. Rev. Stats., title 36, chap. 6; Rev. Stats., art. 1792. Whether or not the ordinance of the city of Beaumont requiring the indorsement on the ballot of the signature, initials, or private mark of the officer delivering the same to the voter is inconsistent with the general law, or unreasonable and therefore invalid, it is not necessary to determine, because a proper construction of the ordinance requires the ballots to be counted. "All statutes tending to limit the citizen in his exercise of this right (suffrage) should be liberally construed in his favor. Unless the ticket comes within the letter of the prohibition it should be counted." Owens v. State, 64 Texas, 509. "It is for the Legislature to prescribe the causes for which votes shall be rejected, and to those prescribed the courts have no right to add others." Davis v. State, 75 Texas, 432, 433; State v. Phillips, 63 Texas, 393; Owens v. State, 64 Texas, 509; Hanscom v. State, 10 Texas Civ. App., 641.

An analysis of the provisions of the ordinance show that the requirement that the ballot shall be marked with the "signature, initials or private mark" of the officer delivering it to the voter is directory only, and not mandatory. The requirement is for the purpose of enabling the officer in charge to identify the ballot as the official ballot. If satisfied that it is a genuine ballot he must deposit it in the box in the presence of the voter. The ordinance declares that "the officer in charge shall not permit said vote to be cast" if it is not the official ballot and does not bear the genuine indorsement of the city secretary and of the officer who delivered it to the voter; and that "no ballots without the official indorsement shall be allowed to be deposited in the ballot box," but there is no prohibition against the counting of such ballots if the officer in charge of the election should permit them to be cast and allow them to be deposited in the ballot box. The prohibition is that "none but official ballots provided in accordance with the provisions of this ordinance shall be counted." The ballots were shown to be the official ballots furnished the voters by the officer in charge of the election, and there being no other objection to them except the legal objection that they did not have the signature, initials or private mark of the election officer upon them, it was the duty of the trial court to count them. The ordinance prescribed the form of the ballot, and provided that ballots in such form should be furnished to the voters, and the ballots rejected by the trial judge were in the form prescribed

by the ordinance, but it is insisted that the ballots were not provided in accordance with the provisions of the ordinance because they did not have the election officer's identification mark upon them. The want of such mark did not prevent the ballots from being the ballots provided in accordance with the provisions of the ordinance. "Provided" means "furnished;" and the thing to be furnished was the official ballot printed at the direction of the city authorities in the prescribed form. The mark of the election officer was not a part of the prescribed form. It was for the identification of the ballot, and although no ballot without such indorsement was allowed to be deposited in the ballot box, yet if it should be deposited, there was no prohibition against counting such ballot. As a reason for holding that the prohibition against the deposit of the ballot without the private mark of the election officer delivering it to the voter is only directory, if an election officer should refuse to receive a ballot on that account the voter would have the opportunity of preparing another ballot; but if not the official ballot, and once cast, the only resource would be not to count it. It will be presumed in favor of the voter that the election officer did his duty and was satisfied of the genuineness of the ballot when he received and deposited it in the box. The law will not be extended by construction to defeat the right of the voter to have his ballot cast in good faith counted as cast.

The judgment of the court below will be reversed, and judgment will be here rendered in favor of the appellant.

*Reversed and rendered.*