HOLLAND et al. v. CRANFILL. (No. 7116.)

(Court of Civil Appeals of Texas. Dallas. May 16, 1914. On Rehearing, June 6, 1914.)

1. JUDGES (§ 44*) — DISQUALIFICATION — PECUNIARY INTEREST—TAXPAYER OF MUNICIPALITY.

Under Const. art. 5, § 11, providing that no judge shall sit in any case wherein he may be interested, judges who were taxpayers of the city of Dallas were disqualified to sit in the Court of Civil Appeals in review of a judgment holding that an ordinance authorizing the issuance of bonds submitted to the electors under the initiative and referendum provisions of Dallas Charter (Acts 30th Leg. c. 71, art. 8), and which was declared adopted by the election officers, was not adopted because of the lack of enough legal votes to pass it, as a judge is disqualified when an order, decree, or judgment will affect him directly in a pecuniary manner.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 203–207; Dec. Dig. § 44.*]

On Rehearing.

2. MUNICIPAL CORPORATIONS (§ 108*)—ORDINANCES—SUBMISSION TO VOTERS.

Pursuant to Dallas Charter (Acts 30th Leg. c. 71, art. 8) the required number of electors requested the submission of an ordinance reciting that it was to require the securing of estimates on installing a municipal electric light and power plant and the submission of a proposition based on such estimates at a regular election, and ordaining that a committee should have estimates made and submitted to the board of commissioners, and that no further contracts for the public electric lighting of the streets be made before a proposition of the establishment of such municipal plant based on such estimates was voted on by the citizens at a regular election. This ordinance having been adopted and such estimates made, the board submitted an ordinance for the issuance of bonds for the purpose of constructing and establishing such plant. *Held*, that this second ordinance was submitted under the initiative and referendum provision, as it was an inherent and necessary part of the first ordinance, and contemplated thereby, and, moreover, under article 2,

§ 2, article 3, § 11, and article 8, ordinances may be enacted only by the board of commissioners or by the electors under the initiative and referendum provisions.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 108.*]

3. JUDGES (§ 44*) — DISQUALIFICATION — PECUNIARY INTEREST—TAXPAYER OF MUNICIPALITY.

Under article 2, § 5, of the charter (Acts 30th Leg. c. 71), requiring bonds, however originated, to be submitted to the proper taxpayers by ordinance prescribing the time, manner, and place of election for that purpose, the adoption of such ordinance for the issuance of bonds, whether submitted under the initiative and referendum provisions or not, left no discretion to the board of commissioners, but required them to issue the bonds, and, in a suit to determine whether such ordinance was legally adopted, taxpayers of the city of Dallas were disqualified to sit as judges in the Court of Civil Appeals, under Const. art. 5, § 11.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 203–207; Dec. Dig. § 44.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by J. B. Cranfill against W. M. Holland and others to contest a municipal election on the question of issuing bonds. From a judgment in favor of plaintiff, defendants appeal. Cause passed, because of the disqualification of the judges, until the appointment of a special court to hear and determine it.

C. F. O'Donnell and Marvin S. Church, both of Dallas, for appellants. Seay & Seay, of Dallas, for appellee.

RASBURY, J. [1] The city of Dallas derives its governmental authority from a special charter granted by the Legislature. Among other grants in the charter are certain initiative and referendum provisions by which the qualified electors of the city may initiate ordinances and have same referred to the electors for adoption or rejection. Dallas Charter (Acts 30th Leg. art. 8, page 49). In the manner provided by the charter, so far as the record here shows, an ordinance providing, in effect, that the city should issue its bonds in the sum of $400,000, and that the money secured thereby should be expended in constructing a municipal light plant for lighting the city's buildings, streets, parks, grounds, etc., was by the mayor and board of commissioners referred to the qualified electors of the city for their adoption or rejection at a regular election held April 1, 1913. The election was held, and a canvass of the vote by the election officers developed that the ordinance had been adopted, and it was so declared by appellants. With reference to those entitled to vote in city elections the Dallas charter provides that at elections held to determine the expenditure of money, etc., only those shall be qualified to vote who pay taxes on property in the city, which, of course, applied to those electors who participated in the election under discussion. Shortly after the result of the vote on the adoption or re-

jection of the ordinance was declared, appellee, a resident taxpayer, instituted the instant suit, alleging, in substance, that, while upon the face of the returns of said election there was cast 1,585 votes for the ordinance and 1,512 against it, nevertheless 1,069 of the votes for the ordinance were illegal, for the reason that many persons voted for the ordinance who were not qualified voters, since they did not pay taxes upon property in the city of Dallas. Prayer was for a recount of the votes and the entry of such judgment as the facts would authorize. Appellants, the mayor and board of commissioners, met the issue thus tendered by full and appropriate pleadings. There was a trial by jury, before whom a recount of the votes was had, and upon their verdict judgment was entered reversing the returns of the election and reciting that said ordinance failed of enough votes to pass it, and decreeing that it was not adopted by the qualified electors participating in said election. From such judgment the mayor and board of commissioners have appealed and assign for review certain proceedings had in the court below.

Upon submission of the case, and during oral argument, the suggestion was made by counsel for the city that the members of this court are, if taxpayers of the city, disqualified by the Constitution of the state to hear and determine the cause, and should recuse themselves, and certify that fact to the Governor, in order that qualified justices may be appointed as provided by law. The ordinance involved in the election contest which is before us for review provides for the expenditure of $400,000 by the city, which amount can be secured only by taxation. Each member of this court owns property in and pays taxes thereon to, the city of Dallas. Thus the question at once arises: Are we "interested," as that term has been several times construed, to such an extent as brings us within the provisions of the Constitution and prohibits our participation in the case? The Constitution of 1876, as amended in 1891, provides:

"No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case. When the Supreme Court, the Court of Criminal Appeals, the Court of Civil Appeals, or any member of either, shall be thus disqualified to hear and determine any case or cases in said court, the same shall be certified to the Governor of the state, who shall immediately commission the requisite number of persons learned in the law, for the trial and determination of such cause or causes. When a judge of the district court is disqualified by any of the causes above stated, the parties may, by consent appoint a proper person to try said case; or, upon their failing to do so, a competent person may be appointed to try the same in the county where it is pending in such manner as may be prescribed by law." Const. art. 5, § 11.

That portion of the article which inhibits members of his court sitting in cases in which they are "interested" is, as we have said, the provision affecting us. The question has been before the appellate courts many times, but the ruling cases peculiarly applicable in the instant case, because of similarity in the facts, are City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 668; City of Dallas v. Peacock, 89 Tex. 58, 33 S. W. 220; City of Oak Cliff v. State of Texas ex rel. Gill et al., 97 Tex. 391, 70 S. W. 1069. The general rule deducible from those cases, as well as earlier Texas cases therein referred to, broadly stated, is that, where a judicial officer has such an interest in the matter at issue in a given suit that any order, decree, or judgment entered therein will affect him directly in a pecuniary manner, he comes within the provisions of the Constitution. On the other hand, if the result of his judgment, decree, or order is but to remotely affect him pecuniarily or is dependent upon other contingencies, he is not disqualified. Typical of the negative of the rule is City of Oak Cliff v. State ex rel. Gill, supra, wherein our Supreme Court held that Chief Justice Gaines was not disqualified to participate in a suit attacking the validity of the act of the Legislature annexing Oak Cliff to the city of Dallas. Justice Gaines was a taxpayer in the city of Dallas, and the act of annexation provided, among other things, in effect, that the city was authorized, for purposes therein enumerated, to issue $50,000 in bonds and levy a tax sufficient to provide a sinking fund and interest, and it was argued that, being a taxpayer, he was interested in the litigation, etc. The Supreme Court, speaking through then Justice Brown, held that Chief Justice Gaines was not disqualified because any judgment entered in the cause by the Supreme Court did not directly produce or cause the issuance of the bonds nor the levy of the tax, since the judgment holding the act valid in no respect exerted any influence over the city council of the city of Dallas in determining whether it would or would not act upon the authority conferred by the act of annexation, and since its authority to do so was derived, not from the judgment or decree of the Supreme Court, but from the act annexing Oak Cliff. Applying the reverse of the holding in that case to the instant litigation, will any judgment we may enter in the instant case produce or defeat the issuance of the bonds and the levy of the tax necessary to the redemption thereof? We believe that indisputably it will. As we have said, the ordinance directing the issuance of the bonds was submitted to the electors of the city by authority of, and in compliance with, the initiative and referendum provisions of the city charter. One of the provisions of that article of the charter is that:

"If a majority of the qualified electors voting on said proposed ordinance shall vote in favor thereof, such ordinance shall thereupon become a valid and binding ordinance of the city, and any ordinance proposed by petition or which shall be adopted by a vote of the people

cannot be repealed or amended except by a vote of the people."

In construing the provision just quoted, our Supreme Court, in City of Dallas v. Dallas Consolidated Electric Street Railway Co., 105 Tex. 337, 148 S. W. 292, said:

"The plain declaration of this charter provision that 'such ordinance shall thereupon become a valid and binding ordinance of the city' forbids the view that the completed enactment of this ordinance was dependent upon anything further than the ascertainment by the board of commissioners that a majority of the qualified electors had voted in favor of it."

Thus, when appellants, the mayor and board of commissioners, ascertained that the ordinance here involved had been adopted, their functions ceased, and the ordinance stood a finished and completed municipal law, under which it was the duty of the appellants to prepare and negotiate the bonds and levy the tax thereby authorized and use them for the purpose indicated. It follows then that, if we take cognizance of the present cause, it will be to entertain and to determine a proceeding which contemplates the destruction of a law which has, in effect, imposed a tax directly upon us, and the existence of which, in the language of the Supreme Court, is dependent upon a judgment to be entered by the members of this court. The record here shows the ordinance was held by the lower court not to have been adopted, and, in illustration of what we have said, an affirmance of that judgment would be to relieve us of the tax imposed, and that such a condition would result is said to be a sure test of disqualification.

For the reason stated, we deem ourselves disqualified to enter any order in the appeal other than to certify our disqualification to the Governor, which is herewith directed, and that the cause be passed until a special court is appointed to hear and determine same.

## On Rehearing.

Counsel for appellee earnestly insist that we are in error in holding ourselves disqualified to consider this appeal on the merits because we are in error in holding: (1) That the ordinance submitting the bond issue was enacted by virtue of the initiative and referendum provision of the city charter; (2) that the "proposition" submitted to the electors to vote the bonds was, in fact, an ordinance; and (3) erred, as a matter of law, in holding that any judgment we might enter on the merits of this appeal would produce or prevent the issuance of the bonds.

[2] The facts contained in the record, because agreed to, were stated by us in a general way, because we presumed no issue would arise in that respect, but, in order to make clear our conclusions of law, we will discuss seriatum the successive steps shown by litigation. On February 20, 1912, certain electors of the city of Dallas, "constituting in number more than five per cent. of the entire vote cast for all candidates for mayor at the last preceding election," requested appellants to submit to the legal voters of said city at the general election to be held in April, 1912, the following ordinance:

"An ordinance requiring the securing of estimates on installing a municipal electric light and power plant, and the submission of a proposition based on said estimates at a regular election.

"Be it ordained by the board of commissioners of the city of Dallas, and by the people of Dallas, acting under the initiative provisions of the charter:

"(a) That a committee consisting of the street, water and finance commissioners, is hereby instructed to have estimates made and submitted to the board of commissioners within 90 days, for installing a municipal electric light and power plant in connection with the water department, and,

"(b) That no further contracts for the public electric lighting of the streets be made by the city before a proposition for the establishment of said municipal plant, based on these estimates, is voted on by the citizens at a regular election."

There are but two methods provided by the Dallas charter by which ordinances may be enacted: By the board of commissioners, and by the electors, as authorized by the provisions of the initiative and referendum provisions of the charter (article 2, § 2; article 3, § 11; article 8). Here we call attention first to the enacting clause of said ordinance which recites that it is ordained "under the initiative provisions of the charter," and second to the statement already quoted from the agreed statement of facts, describing those presenting the ordinance as "constituting in number more than five per cent. of the entire vote cast for all candidates for mayor at the last preceding election," which is all but a literal reproduction of the language contained in the initiative provision of the charter providing how such ordinances may be originated. Thus it will be seen that the ordinance quoted was at least enacted under the initiative and referendum provisions of the charter. Proceeding, then, with the record, it appears that appellants did submit said ordinance to the electors at a general election on April 2, 1912, and after canvassing the votes appellants declared said ordinance "duly enacted." Afterwards, acting pursuant to the powers conferred by the ordinance so adopted, the board of commissioners, acting through two of its members, estimated the cost of installing said municipal lighting and power plant, which estimate was adopted by the board. Thereupon appellants submitted to the electors for their adoption or rejection at the general election of April, 1913, and after making said estimate, the following ordinance:

"For the proposition of the issuance of $400,000 in bonds of the city of Dallas, for the purpose of procuring money for the following permanent public improvements, to wit: For the purpose of constructing and establishing a municipal electric lighting plant to furnish the public lighting of the streets, parks, grounds and municipal buildings of the city of Dallas."

We hold this last ordinance to be an inherent and necessary part of the ordinance submitted to the electorate, and to have been contemplated by said ordinance. The preamble of the initiative or first ordinance recites its purpose to be to secure an estimate of the cost of installing a municipal light and power plant and the submission of a proposition based on such estimate at a regular election. Further, the concluding clause thereof makes the intention yet clearer in directing that no further contracts for public lighting be made by the city until a proposition to establish a lighting plant based upon the estimates to be prepared by authority of the first ordinance is voted upon at a regular election. The necessity for deferring an election on the bond issue contemplated by the initiative ordinance is found in the fact that by the Dallas charter bonds may in no event be issued by its commissioners until authorized by vote of the electorate. Article 2, § 5. Recognizing that rule, the appellants made no attempt to submit the bond issue contemplated thereby until the attitude of the electorate toward the ordinance as a whole was disclosed; since the issuance of bonds with which to construct the proposed plant depended upon the adoption of the ordinance authorizing both. At the first regular election after the adoption of the ordinance, being the only election at which bond issues may be approved or rejected, the next successive step under the ordinance was taken, that of submitting to the electorate the bond issue contemplated thereby. Until the electorate had voted upon the issuance of the bonds made necessary by the provision in the charter requiring all bonds to be so voted upon the ordinance was incomplete and unfinished, since by its exact provisions a subsequent election upon a bond issue to perfect and complete its purpose was contemplated.

[3] Beyond and beside what we have just said, and conceding that the ordinance last submitted to the voters was independent of, and not contemplated by, the initiative ordinance, the result in the last analysis will surely be the same. The Dallas charter provides that every proposition to issue bonds, however originated, shall be submitted to the property taxpayers of the city, by ordinance prescribing the time, manner, and place of election for that purpose. Dallas Charter, art. 2, § 5. Such an ordinance was prepared and submitted to the voters, which contained the provision that the bonds, if voted, would be used to procure the money necessary to establish the lighting plant authorized by the first ordinance. This last ordinance, on the face of the returns of the election, was adopted. By judgment of the district court it is decreed, as matter of fact, that it was not. Thus whether the bonds shall be issued or not ultimately depends upon the result of the election contest, and as a consequence any judgment entered in this appeal by us will produce or prevent the issuance of the bonds. While appellants, as the duly constituted officials of the city have the right to propose bond issues to the electorate, and may exercise their discretion in that respect, it is equally clear that, after a majority of the property taxpayers have voted the bonds, their duties become purely ministerial, and are confined to the preparation and negotiation thereof, as prescribed by the further provisions of the charter.

Deeming our original conclusions correct, it becomes our duty to overrule the motion for a rehearing.