**GARESS v. TOBIN, Mayor, et al. (No. 7209.)***

(Court of Civil Appeals of Texas. San Antonio. April 16, 1924. Rehearing Denied May 7, 1924.)

1. **Judges ☞44—Justices of Court of Civil Appeals held not disqualified as city taxpayers from rendering decision in bond election contest.**

Justices of Court of Civil Appeals at San Antonio *held* not disqualified under Const. art. 5, § 11, and Rev. St. art. 1584, on ground of personal interest as taxpayers in such city, from rendering decision in bond election contest.

2. **Constitutional law ☞18—Retention of provision in amending act strongly persuasive that it should be interpreted as theretofore practically construed.**

That provision of Const. art. 5, § 11, disqualifying judge from sitting in case in which interested, was not changed by amendment of 1891, *held* strongly persuasive that it should be interpreted as theretofore practically construed, and hence as not disqualifying judge owning taxable property in city from sitting in case in which money judgment could be rendered against city.

3. **Election ☞285(1)—Paragraph merely copying sections of city charter, without alleging violation, read with other paragraphs setting up grounds of city bond election contest.**

In determining sufficiency of plaintiff's pleadings in city bond election contest, paragraph merely copying sections of city charter, without alleging violation thereof, must be read with other paragraphs setting up grounds of contest.

4. **Elections ☞285(3) — Petition attacking qualifications of voters in bond election contest held insufficient.**

Allegations in city bond election contest that persons not qualified under San Antonio City Charter, §§ 5, 53, because their names did not appear on last assessment roll as property taxpayers, voted without having produced tax receipts and affidavits as to payment of taxes, etc., *held* insufficient, in absence of express allegation that they had not paid taxes, to show disqualification of such voters under Const. art. 6, § 3.

5. **Elections ☞285(1)—Contest petition must set forth facts, particularly and precisely, and in legal and logical form.**

In election contest, petition or complaint must set forth facts, particularly and precisely, and in legal and logical form.

6. **Elections ☞284—Pleadings in contest case should not be so loosely construed as to permit inquiry without well-defined just cause.**

Pleadings in election contest should not be so strictly construed as to protect fraud, nor so loosely as to permit disturbance of community and inquiry into election without well-defined just cause.

Appeal from District Court, Bexar County; Robert W. B. Terrell, Judge.

Suit by E. B. Garess against John W. Tobin, Mayor of the City of San Antonio, and others. From judgment of dismissal, plaintiff appeals. Affirmed.

Lewright & Lewright, of San Antonio, for appellant.

Joseph Ryan and John P. Pfeiffer, both of San Antonio, for appellees.

FLY, C. J. Appellant filed a suit against John W. Tobin, mayor of the city of San Antonio, to obtain an injunction restraining him from removing from the custody of the district court, or tampering with, any of the ballot boxes which were used at an election held in the city on December 4, 1923, to determine whether the city should issue bonds to raise money for certain purposes named in an ordinance passed by the commissioners of the city of San Antonio, that the court recount the ballots, tabulate and sum up the returns in open court, and declare that all the propositions to the voters were defeated, and if it was impossible for the court to ascertain the true result, then that the election be declared null and void and a new election be ordered.

A general demurrer and the following special exceptions to the petition were presented by appellee, and sustained by the court:

"1. Contestee specially excepts to paragraph 9 of contestant's amended pleading herein filed, because as to section 5 of said charter the same is contrary to the Constitution and laws of the state of Texas, and is not the exclusive test of who were qualified voters at said election on December 4, 1923, but that, under the Constitution and laws of the state of Texas, all those who owned property subject to taxation on June 1, 1923, were qualified to vote at said election.

"2. Contestee specially excepts to paragraph 12 of said amended pleading of contestant, because (a) said Exhibit No. 3 is not attached to said pleading, and (b) because section 5 of the charter of said city is not the exclusive test of who were qualified to vote at said election on December 4, 1923, but that all persons owning property subject to taxation within the limits of the said city of San Antonio, and being otherwise qualified voters, were qualified to vote at said election; and to paragraph 13 of said amended pleading because the names of said alleged 6,621 persons are not specifically set forth, and because the fact that their names may not have appeared on the last assessment roll of said city for the fiscal year beginning June 1, 1922, is not the test, the test being whether or not the voters in question owned property subject to taxation on June 1, 1923, the beginning of said city's fiscal year in which said bond election was held.

"3. Contestee specially excepts to paragraph 14 of said amended pleading, because, whether the word 'sworn' was written on the back of any ballot, or beside the name of any person voting at said election, on the poll list, or whether any person made or did not make any affidavit, as referred to in said paragraph 14, or

did exhibit or produce to the officers of election his or her tax receipt showing payment by him or her of said taxes for the preceding fiscal year, is immaterial, directory only, and cannot control the result of the election and is not sufficient grounds for setting said election aside."

Appellant declined to amend, and the cause was dismissed at the cost of appellant, to all of which appellant excepted and gave notice of appeal to this court.

[1, 2] Appellant has filed herein a motion to the effect that the Chief Justice and Associate Justice of this court are disqualified to render a decision in this case, because, being taxpayers in the city of San Antonio, they are interested in the question to be determined under the terms of article 5, § 11, of the state Constitution and article 1584 of the Revised Civil Statutes of Texas. The cases of City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 668, 960, and Holland v. Cranfill (Tex. Civ. App.) 167 S. W. 308, are cited.

The Nalle Case can easily be distinguished from the case under consideration. In the Nalle Case bonds had been issued and sold by the city of Austin, and it involved the levying of a tax to provide for the interest and sinking fund. This is merely a contest of an election; no steps having been taken to issue bonds. If the facts of the two cases had been the same, however, the Nalle Case has been so limited, if not overruled, by an opinion by the same great judge in the case of City of Dallas v. Peacock, 89 Tex. 58, 33 S. W. 220, that it is much weakened as an authority. After discussing several English decisions, which hold that the taxpayer in a municipal corporation has such an interest in a suit between the corporation and another party as disqualified him to sit as judge or juror in the case, the court held:

"But we think the doctrine that being a mere taxpayer of a city does not work a disqualification is supported by the sounder reason, at least, as applied to municipalities existing under our laws."

That was a case in which the three members of the Court of Civil Appeals at Dallas were taxpayers in the city, and the case was one involving a claim for money between the city and the other party. The court quoted the constitutional provision that "no judge shall sit in any case wherein he may be interested," and, after stating that the same provision is in every state Constitution since Texas entered the Union, held:

"The records of this court show that eminent judges of this court have sat in cases against cities in which we have every reason to believe they were taxpayers, and in two instances, at least, have delivered the opinions in the cases. So we think, also, that district judges who were inhabitants of cities have uniformly tried cases against the cities in which they lived. While, therefore, there has been no formal ruling upon the question, the provision in con-

troversy has been practically construed both by the trial judges, and the judges of the Supreme Court. Until the decision in the case of the City of Austin v. Nalle, 85 Tex. 520, the competency of a judge who owned taxable property in a city to sit in a case in which a judgment for money could be rendered for 'or against a city was, so far as we know, never called in question. The practical construction of the provision must have been known to the bar of the state, and to the members of the Legislature who passed the resolution propounding the amendments to the judiciary article of our Constitution, which were voted upon and adopted in 1891. While section 11, which contains the provision disqualifying a judge from sitting in a case in which he is interested, was amended, that provision was retained without change; and we think it strongly persuasive, at least, that it should be interpreted as it had been practically construed. In respect to the question before us, the relation of a taxpayer of a city to the city is not different from that of a taxpayer of a county to a county. Neither is it distinguishable in principle from that of one who owns taxable values in the state to the state. Yet that taxpayers in the state are qualified to sit as judges and jurors in all state cases cannot be questioned. So, also, so far as we know, it has never been questioned in this state that the taxpayers in a county are competent jurors in all cases, civil and criminal, in which the fines and penalties recovered go to the use of the county."

The judges of the Court of Civil Appeals were held not disqualified to sit in the case.

Of all Texas cases on the subject of disqualification by reason of interest, the clearest and most reasonable is the decision rendered by Judge R. R. Gaines in the case of City of Dallas v. Peacock, and he has forcibly and plainly declared the rule that should obtain. In that case it was held that the relation of—

"a taxpayer of a city to the city is not different from that of a taxpayer of a county to a county. Neither is it distinguishable * * * from that of one who owns taxable values in the state to the state."

Having fixed the relation of taxpayer in the city to the city as the same as that of a taxpayer in a county and the state to the county and the state, the court then says:

"Yet that taxpayers in the state are qualified to sit as judges and jurors in all state cases cannot be questioned."

Having held that the relation of the judge and juror to his city is the same as the relation of the judge and juror to his county and state, the effect of the decision is that "taxpayers in a city are qualified to sit as judges and jurors in all city cases," and that this right is beyond question. The learned Chief Justice stated this interpretation and construction of the Constitution had been practically acted upon during the existence of Texas as a state, and that such practical construction should be followed by the courts. No court in Texas, so far as we know, has dis-

qualified itself to sit in state cases involving the important subjects, nor in county cases involving the issuance of bonds and other pecuniary matters. This court, in the case of Galveston, Harrisburg & San Antonio Railway Co. v. State, 36 S. W. 111, in which the title to 879,070 acres of the public domain was involved, decided a matter in which every taxpayer in Texas was indirectly interested. The Supreme Court refused a writ of error.

In California, in the case of Meyer v. San Diego, 121 Cal. 113, 53 Pac. 1128, 41 L. R. A. 762, it was held, that judges were disqualified in a case where they were taxpayers in a city, but it was conceded that "where the * * * bonded indebtedness of the state comes before its tribunals, they must act, or the right remain forever without the possibility of its remedy," and it is admitted by the court that, "in such cases, however, the judges are as fair and impartial as the lot of humanity doth permit, and trial before such is all that the Constitution, or Lord Coke's jus naturæ, can preserve to any man." The absurdity of basing the qualification of a judge on the inability to get some one to try the case is apparent, and Judge Gaines avoided such absurdity by stating the necessity to permit judges and jurors to sit in state cases, "does not change the principle." In other words, if the taxpaying judge can sit in state cases, the necessity of permitting him to sit would not destroy his interest in the subject-matter of the suit and bring him within the purview of the Constitution. If he is not an interested judge in the state case, where his taxes might be increased or diminished by his decision, he would not be so interested in a county or city case. It is clear that "the relation of a taxpayer of a city to the city is not different from that of a taxpayer of a county to a county. Neither is it distinguishable in principle from that of one who owns taxable values in the state to the state, and this doctrine has never been questioned or limited by the Supreme Court of Texas. The interest in each case is "too shadowy, indirect, remote, and contingent" to disqualify a judge to sit in a case because he is a taxpayer. No valid reason has been given and no valid reason can be given for qualifying a judge or juror in a bond case in which a county or state is interested, and disqualifying him in a bond case in which a city is interested; the judge or juror being a taxpayer in each instance.

The whole of the fine-spun theories and flimsy distinctions that have been drawn in American courts is based on English decisions which carried the question of interest to such an absurd extent as to deny the right of an interested witness to testify, holding that, if a "sheriff, a juror, or a witness be in any sort interested in the matter to be tried, the law considers him as under an influence which may warp his integrity, or pervert his judgment, and therefore will not trust him." American courts have put aside the doctrine of disqualification as to witnesses and as to jurors and judges in regard to state and county matters, but many of them hang, with singular and unreasonable tenacity, to the English doctrine when applied to cities. We fail to see the distinction, and it is a reflection upon the honor and integrity of every taxpaying judge and juror in a city to claim his disqualification in the trial of causes in which the city may be a party.

This court has rendered many decisions in which the financial affairs of the city of San Antonio have been involved, and it has never been claimed that there was any ground for impeaching one of the judgments on the ground of interest. The spirit of the Constitution does not call for the trial of city cases by vagrants or impecunious individuals, who pay nothing to maintain the city, or by men from other points in the state. If the courts are disqualified, the sheriff and jurors are disqualified, and a change of venue must necessarily be granted in every case in which a city is interested.

In the case of City of Oak Cliff v. State of Texas, 97 Tex. 391, 79 S. W. 1068, the plaintiff in error sought to vacate a judgment rendered by the Supreme Court on the ground that Chief Justice Gaines was a taxpayer in the city of Dallas. The annexation of Oak Cliff and a bond issue by the city of Dallas was in dispute. The Supreme Court quoted the following from a text-book:

"The interest which will disqualify a judge must be direct and immediate and not contingent and remote."

The court further said:

"We are of opinion that Chief Justice Gaines has not such direct and immediate interest in the result of this suit as would disqualify him under these authorities. The judgment in our opinion will not directly produce the issuing of the bonds nor the levy of any tax, and therefore it cannot be said that he is directly or immediately interested. The judgment of this court does not command the city council of Dallas to issue the bonds nor to levy the tax and can exert no influence over that body in the performance of its duty; the city will derive no authority from that judgment."

In the case of Oak Cliff v. State, the judge writing the opinion placed therein dicta as to what should be considered in ascertaining the interest of a judge, which dicta was that in regard to measuring the interest of the judge by the effect of the judgment. This has caused at least one Court of Civil Appeals to disqualify itself because the city of Dallas might be helped or hindered by the judgment in the issuance of bonds. Holland v. Cranfill (Tex. Civ. App.) 167 S. W. 308. The only question in the Oak Cliff-State Case was whether Judge Gaines was disqualified,

and the court very properly held that he was not; placing its judgment on the ground that it did not give Dallas the right to issue the bonds. Without that judgment, however, Dallas could not have issued the bonds. The tenable and only valid reason given for the opinion was that "Chief Justice Gaines had not such direct and immediate interest in the result of the suit as would disqualify him." It was gratuitous to say that under other circumstances the judge might be disqualified. We would not test the qualifications of a judge by what the effects of his judgment might possibly be.

In this case appellant does not allege that any bonds have been issued by the city of San Antonio, but that the city was preparing to issue bonds and sell them, if a sale could be effected. No bonds are in existence and, of course, the contingency that taxpayers will be called upon to pay taxes for interest and sinking funds on the bonds is remote, uncertain, and contingent on certain circumstances.

The only question before this court is the validity of the election that is being assailed, and if we are to be guided by the dicta in the Oak Cliff-State Case, this court has no such direct and immediate interest in the result of this suit as to disqualify the judges to sit in this case. This case is easily distinguished from the Nalle Case in the same way that it is distinguished in the Oak Cliff-State Case. A judgment of this court upholding or destroying the election would not prevent a resubmission of the propositions to the voters and an issuance of the bonds if the election should be favorable. We are not seeking, however, to evade the issue as to our disqualification on a mere technicality as was done in the Oak Cliff-State Case, but say that the members of this court have no direct personal interest in the outcome of this case, and consequently are not disqualified.

[3, 4] The special exceptions are aimed at paragraphs 9, 12, and 14 of the amended pleadings of appellant. Paragraph 9 merely copies two sections of the charter of the city, and, standing alone, without any allegation of the sections having been violated, states no ground of contest of the election, but it must be read in connection with paragraphs 12 and 14, which set up the grounds of contest. It is alleged that section 5 of the city charter provides that, when taxpayers alone can vote, only actual taxpayers whose names appear on the last assessment roll of the city as property taxpayers are meant, but with the proviso that any person, otherwise qualified, whose name does not appear on the roll may vote by producing his property tax receipt of the preceding year and making affidavit that he has paid the taxes, and the word "sworn" shall be written on the back of his ballot and opposite his name on the poll list. It was alleged that

"approximately 6,621 persons who were not qualified under that section and section 53 to vote did vote at the election of December 4, 1923." No allegation was made in paragraph 12, in what respects the requirements of the charter had not been complied with. Section 53 merely requires that propositions for borrowing money shall be submitted "to the qualified taxpaying voters of the city." In paragraph 14 of the pleading it is alleged that the word "sworn" was not written by an officer on the back of the ballot of any person who voted at said election, nor was such word written opposite the name of such voter on poll lists, and no affidavits were made, as required in section 5 of the charter, nor were any tax receipts produced. These are the grounds of attack on the qualifications of the voters.

Section 3, of article 6 of the state Constitution provides:

"All qualified electors of the state, * * * who shall have resided for six months immediately preceding an election within the limits of any city or corporate town, shall have the right to vote for mayor and all other elective officers; but in all elections to determine expenditure of money or assumption of debt, only those shall be qualified to vote who pay taxes on property in said city or incorporated town."

The object of the section of the charter in question was to provide one mode at least in which it could be ascertained whether the person desiring to vote had paid taxes on property in the city. When that object was attained, by whatever method, the voter was qualified under the Constitution. The charter does not provide that unless it be ascertained in the way prescribed the person desiring to vote shall be disqualified from voting. It does not say that the mode of testing the voter's qualification is exclusive of all others, and no other method of ascertaining that a person is a taxpayer can be used. If the voter be a taxpayer, and that fact is made known in any satisfactory way to the officers of election, the voter is qualified. There is no allegation in the petition that any person who cast a ballot at the election was not a taxpayer in the city of San Antonio. The provisions in the charter do not attempt to prescribe any additional qualifications for the voters, but merely provide a means by which the constitutional qualifications might be ascertained. In the absence of any allegation that any person who voted at the election was not a taxpayer in the city, the presumption will prevail that each voter was a taxpayer. The allegations in the petition do not assail the constitutional qualifications of the voters, but merely attack their right to vote on the ground that the manner of ascertaining such qualifications was not followed. It is true that it is alleged that certain voters "were not then and there duly qualified and actual taxpaying voters

261 S.W.—28

of said city of San Antonio," but that allegation is coupled with the reasons for the general allegation, which were that a certain section of the charter, and not of the Constitution, had not been complied with. It is not in terms alleged that any man permitted to vote had not paid his taxes. In the exhibit attached to the petition the grounds of ineligibility are not that the voters had not paid their taxes, but that they "do not appear on tax roll, but on poll list" and "voted and not on tax rolls, but are on poll tax list." The only grounds for attacking the right of the voters to cast their ballots were not that they had not paid their taxes, but that they had not proven it to the officers of the election in the manner provided in the city charter. Kempen v. Bruns (Tex. Civ. App.) 195 S. W. 643, and authorities cited.

[5, 6] It is the rule in election cases that the petition or complaint must set forth the facts with particularity and precision, and it should state in a legal and logical form the facts which constitute the ground of complaint. The pleadings should not be so strictly construed as to afford protection to fraud, nor so loosely as to permit a community to be disturbed and elections inquired into without well-defined just cause. The pleadings in this case fail to meet the requirements of precision, particularity and certainty, and the exceptions were properly sustained.

The judgment is affirmed.