ROBERTS et al. v. EPPERSON, Co. Atty., et al. (No. 7624.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 17, 1926.)

1. Waters and water courses ⬤⟹230(1)—Two-thirds of all votes cast, including illegal ones, is not required to carry irrigation bond issue (Const. art. 3, § 52, and article 11, § 10).

Const. art. 3, § 52, does not require two-thirds of all votes cast, including illegal votes, to carry irrigation bond issue and tax levy, and article 11, § 10, applies only to cities and towns forming independent school districts.

2. Waters and water courses ⬤⟹230(1)—Ballots of qualified voters at irrigation bond election are not invalidated by failure to administer oath (Rev. St. 1925, art. 7692).

Failure of election officer to administer oath required by Rev. St. 1925, art. 7692, does not invalidate ballots cast by qualified voters in irrigation bond election.

3. Waters and water courses ⬤⟹230(1)—One not obtaining poll tax receipt after year's residence held not entitled to vote in irrigation bond election.

One not obtaining poll tax receipt before February 1, 1925, after completing year's residence in state on January 2, 1925, was not entitled to vote at irrigation bond election on December 9, 1925.

4. Waters and water courses ⬤⟹230(1)—Persons whose only home was their house in irrigation district held entitled to vote at bond election, though temporarily absent.

Persons owning house, which was their only home, and land, which they cultivated, in irrigation district, wherein they intended to build another house, held entitled to vote at bond election therein, though temporarily outside district.

5. Waters and water courses ⬤⟹230(1)—One never abandoning homestead in irrigation district held entitled to vote at bond election, though absent for time before election.

One never abandoning his homestead in irrigation district nor acquiring any other home held entitled to vote at bond election therein, though absent for a while before election.

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Waters and water courses ⊚═230(1)—One not resident taxpayer of county, nor claiming irrigation district as his home, and voting in school election elsewhere, could not vote at district bond election.**

One not a resident taxpayer of county, nor claiming home in irrigation district therein, and voting in election for school trustees in outside city, where family had resided for three or four years, *held* not entitled to vote at irrigation bond election.

**7. Waters and water courses ⊚═230(1)—One whose wife came to, and bought lots in, irrigation district, with intent to live there, held entitled to vote at bond election.**

One whose wife came to irrigation district and bought lots therein, with intent to make it their home, in November, 1924, and had fixed intention to live there after such time, *held* entitled to vote at bond election, though they went back and forth several times between state and state from which they came and returned to latter to wind up their business affairs.

**8. Waters and water courses ⊚═230(1)—One moving to irrigation district with intent to make permanent home there, owning interest in land therein, and paying poll tax in county from which he moved, could vote at bond election.**

One moving to irrigation district from city in state in May, 1925, with intent to remain and make it his permanent home, owning interest in land therein and other property, and paying his poll tax for that year in county from which he moved, *held* entitled to vote at bond election, on December 9, 1925.

**9. Waters and water courses ⊚═230(1)—Failure to pay taxes on personalty in irrigation district does not disqualify resident owners to vote at bond election.**

Persons residing, and owning personal property, in irrigation district, are not disqualified to vote at bond election by failure to pay taxes thereon.

**10. Waters and water courses ⊚═230(1)—Ballot, from which neither affirmative nor negative proposition as to irrigation bond issue was erased, held properly excluded.**

Ballot, from which neither affirmative nor negative proposition as to issuance of irrigation bonds was scratched, *held* properly excluded, though there was a cross opposite negative proposition.

**11. Waters and water courses ⊚═230(1)— Ballots, from which both affirmative and negative propositions as to irrigation bond issue were erased, held properly rejected.**

Ballots, from which both affirmative and negative propositions as to issuance of irrigation bonds were erased, were properly rejected.

**12. Elections ⊚═293(3)—Voters' testimony is inadmissible to legalize votes.**

Voters' testimony is inadmissible to give effect to illegal votes.

Appeal from District Court, Hidalgo County; J. E. Leslie, Judge.

Election contest by J. B. Roberts and others, opposed by J. C. Epperson, County Attorney, and others. From a judgment against contestants, they appeal. Affirmed.

Harry M. Carroll, of Donna, and Don A. Bliss, of San Antonio, for appellants.

W. G. Weaver, of Donna, and D. W. Glasscock, of McAllen, for appellees.

FLY, C. J. This is a contest of an election held on the question of the issuance of bonds for irrigation purposes in Donna irrigation district No. 1, Hidalgo county, on the ground that 78 votes cast against issuance of the bonds "were thrown out and not counted by said election officers," and also on the ground "that the said election officers falsely stated in their returns of the election the result of said election." The court rendered judgment against the contestants and held that the election was legally conducted and resulted in a two-thirds vote in favor of the issuance of the bonds.

We adopt the findings of fact, substantially, of the trial judge. We glean from those findings the conclusions that 353 legal ballots were cast for issuance of the bonds, and 167 legal ballots were cast against the issuance of the bonds, and consequently that the proposition to issue the bonds and levy the necessary tax was carried by two-thirds of the resident taxpaying citizens of the district legally voting at such election. Two-thirds of 520, the total legal vote cast, would be approximately 348 votes, while 353 votes were cast for the proposition. The official ballot was printed as required by statute, and the election held substantially according to law. The ballot boxes were opened and the ballots counted by the court.

[1] The first three propositions which fail to indicate, as do all the propositions, the assignments of error to which they belong, seem to claim that the Constitution requires the two-thirds of all the votes cast at an election involving the levying of a tax are necessary to carry the issuance of bonds and levy of a tax, whether the whole or a part of such votes be illegal or not. That is to say, if 300 votes be cast in such an election, 50 of which are illegal, there still must be two-thirds of 300 votes in order to carry the election. We cannot sustain such a proposition. The Constitution provides that such districts as the one involved herein may issue bonds "upon a vote of a two-thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be affected thereby." Article 3, § 52, Const. The language is too plain to require construction, and the first three propositions are overruled. Marsden v. Troy (Tex. Civ. App.) 189 S. W. 960. Article 11, § 10, applies only to cities and towns forming independent

school districts and not to any other district or subdivision of the state. We do not intimate that the construction sought by appellant is correct as applied to the article and section last named.

[2] The fourth and fifth propositions are overruled. Two-thirds of the legal voters did cast their ballots for the issuance of the bonds, and the failure to administer the oath required in article 7692, Rev. Stats. of 1925, did not invalidate the ballots. The evidence showed 520 qualified voters cast their ballots; each one of them held every qualification and complied with every requisite demanded of him by law, and in the absence of an express statutory provision to that effect, he will not be deprived of his franchise by the negligence or ignorance of an election officer. McKinney v. O'Connor, 26 Tex. 5; Stinson v. Gardner, 97 Tex. 287, 78 S. W. 492; Kulp v. Railey, 99 Tex. 310, 89 S. W. 957; King v. State, 30 Tex. Civ. App. 320, 70 S. W. 1019; Altgelt v. Callaghan (Tex. Civ. App.) 144 S. W. 1166; Mecaskey v. Ratliff (Tex. Civ. App.) 159 S. W. 115; Hebert v. Scurlock (Tex. Civ. App.) 178 S. W. 714; Garess v. Tobin (Tex. Civ. App.) 261 S. W. 430; Wendover v. Tobin (Tex. Civ. App.) 261 S. W. 434. The object of article 7692 was to prescribe one method of testing the fact whether or not the voter was a "resident property taxpayer of said district" and to ascertain whether he had voted before at the election. If those facts were established in any other way, then the object desired had been attained. Speaking of a charter requirement of the city of San Antonio, similar to the statutory requirement under consideration, this court in the cited Garess-Tobin Case said:

"It does not say that the mode of testing the voter's qualification is exclusive of all others, and no other method of ascertaining that a person is a taxpayer can be used. If the voter be a taxpayer, and that fact is made known in any satisfactory way to the officers of election, the voter is qualified."

If the voters were qualified under the Constitution it does not matter that every evidentiary requirement as to qualification was not demanded. With or without the statutory oath, the question is: Were the persons voting qualified resident taxpayers of the district and did each cast only one ballot? The right to vote is too precious to be lost by the failure of an officer to use all the statutory methods of testing the qualifications of the voter. If the voters were taxpayers in the district and qualified otherwise to vote, no statutory provision in addition to the constitutional requirements could deprive them of the right to vote. Wendover v. Tobin, herein cited.

[3] A poll tax receipt obtained on January 6, 1926, did not authorize W. E. Wright to vote at a bond election held on December 9, 1925. His poll tax receipt entitled him to vote in 1926, but not in 1925. In order to vote in 1925, the voter should have obtained a poll tax receipt at some time before February 1, 1925. It may be argued that the voter having begun his residence in Texas on January 2, 1924, had not been a resident of Texas for 12 months prior to January, 1925. His year's residence in Texas, however, ended on January 2, 1925, and he could have applied for and obtained a poll tax receipt at any time after January 2, 1925, and before February 1, 1925. The law provides:

"That any voter who is subject to pay a poll tax under the laws of this state or ordinances of any city or town in this state shall have paid said tax before offering to vote at any election in this state and holds a receipt showing that said poll tax was paid before the first day of February next preceding such election."

While appellant could not in 1924 obtain a poll tax receipt because not qualified by residence of 12 months in the county, he could have obtained the receipt before February 1, 1925, which would have qualified him to vote at any election in 1925. This ruling does not affect the result.

[4] We overrule the seventh proposition. The Reids owned a house and 40 acres of land in the Donna irrigation district and intended to build another house there. They had the land in cultivation and it was their only home. They were only temporarily in Weslaco.

[5] The eighth proposition is overruled. M. E. Broadus owned a homestead in Donna and, although absent for a while previous to the election, had never abandoned his home or acquired any other home. He was entitled to vote.

[6] We sustain the ninth proposition. J. W. Cross was not a resident taxpayer of Hidalgo county at the time he voted for the issuance of the bonds. His family had resided in San Antonio for three or four years, and he made no claim that Donna was his home. He had voted in an election for school trustees in San Antonio. His vote should have been excluded. This ruling does not alter the result.

[7] The court did not err in permitting E. W. Pridmore to vote. His wife came from Mississippi to Donna in November, 1924, and bought lots in Donna with the intention of making the latter place their home. They went back and forth several times between Texas and Mississippi, but from November, 1924, had the fixed intention of living in Donna. They returned to Mississippi merely to wind up their business affairs there. The tenth proposition is overruled.

[8] The eleventh proposition is overruled. F. A. Yerger moved from San Antonio to Donna in May, 1925, with the intention of remaining there and making it his permanent home. He owned a third interest in 20 acres of land in the Donna district. He owned other property. He paid his poll tax for 1925 in Bexar county.

[9] Proposition 11-A is overruled. The three men whose qualifications were attacked were residents of the district and owned personal property therein. It would not disqualify them because they had not paid taxes thereon. No other ruling has been made in Texas.

[10-12] The ballots of J. F. Harbin, B. O. Wilkerson, J. M. Todd, and F. C. Appleton were properly excluded. Harbin did not scratch the affirmative or negative proposition as to the bonds, but left both on the ballot. There was a cross opposite the negative proposition, but that did not indicate the intention of the voter. He should have erased one or the other of the propositions. Of course, where both propositions were erased the ballots were properly rejected. It would be preposterous to permit the testimony of voters to give effectiveness to illegal votes.

The judgment is affirmed.