## J. C. HENDERSON v. GEORGE O. ALBRIGHT.

### No. 1545.

**1.  Election Contest—Estoppel.**

The respondent who has received a certificate of election to the office of county judge is not estopped, upon the trial of a case brought to contest his election, from going behind the returns from ballot boxes which were counted by the Commissioners' Court without objection by either party, and which formed the basis of such certificate.

**2.  Same—Evidence—Ballots Admissible, When.**

In a contested election trial, the ballots of a voting box which, after the election, had been opened before a legislative committee, are admissible in evidence, where it appears from the testimony of officers having the box in charge all the time that there was no probability that the ballots had been tampered with.

**3.  Same.**

Where there were discrepancies between the tally sheets of the different clerks of the election at the voting box in question at the time when the count was concluded by the managers of the election, which discrepancies the managers attempted to reconcile by guessing at the result, and making changes accordingly, the fact that there is a discrepancy between the returns of the votes from such box and the recount thereof, as made by the court in the trial of an election contest, does not indicate that there was any alteration in the ballots after being voted, or tend to cast suspicion thereon.

**4.  Same—Motion for New Trial—Surprise—Diligence.**

In an election contest, the contestant moved for a new trial on the ground that he was surprised at the result of a recount of a certain voting box, and that he expected to be able to prove by the voters themselves that certain ballots shown by the recount to have been cast for the respondent were in fact cast for himself. The respondent had attacked by his allegations the regularity of the returns from that box, and it was shown that more than six months previously a recount of the box was had in another contest, in which the same questions were raised before a legislative committee, in which the same discrepancy appeared, of all of which contestant and his attorney had notice before trial, and that contestant, though so advised to do, had neglected to have subpoenas issued to the parties alleged to have voted for him. Held, that diligence was not shown, and the motion was properly refused.

APPEAL from Cass.  Tried below before Hon. JOHN L. SHEPPARD.

*Todd & Todd* and *Chas. S. Todd,* for appellant.—1.  Acceptance of the benefit of legal proceedings will estop the party so accepting. Bridges v. Johnson, 69 Texas, 717; Aspden v. Nixon, 4 How., U. S., 467; Thurman v. McKeon, 36 N. Y., 266; Caril v. Oakey, 77 N. Y., 633; Long v. Fox, 100 Ill., 43; Edwards' Appeal, 105 Pa. St., 103; 7 Am. & Eng. Enc. Law, 22.

2.  The right to a new trial on the ground of newly discovered evidence is not exclusively within the discretion of the trial court; and it is a settled rule in our Appellate Courts to revise the action of the District Court overruling the motion where the newly discovered evidence, when considered in connection with the facts developed on trial, is clearly material to the issue, and might probably produce a different result on another trial; and where the evidence came to the knowledge of applicant, after the trial, and without a want of due diligence on his part in not sooner discovering it.  Rev. Stats., art. 1368;  Railway v. Forsyth, 49 Texas, 178.

3.  The returns are primary, and best evidence of the result of an election, unless set aside; and the ballot cannot be considered better evidence, or opened at all, if any reasonable doubt is shown to exist as to its custody, and absolute sanctity.  Davis v. State, 75 Texas, 427; Rev. Stats., arts. 1694-1706, 1732.

*O' Neal & Allday*, for appellee.—1.  Appellee did not inflict any injury in law upon appellant in receiving said certificate of election, if he had declined to do so, said office would have been vacant, and his accepting same is not inconsistent with his defense in this suit.  Rev. Stats., arts. 1705, 1707, 1718.

2.  The rule is universal, applicable alike to estoppel by record, by deed, or to equitable estoppel, or estoppel in pais, that estoppels must be mutual.  Herman, Est., sec. 20.

3.  Where there is confusion between the returns and the tally sheets, it is proper to verify the vote by opening the box and counting the ballots, when the ballot box has been safely kept, and no evidence of same having been unlawfully tampered with; or where fraud has been charged on the managers of the election in counting and returning the vote, or a suspicion cast upon the count.  Hunnicutt v. State, 75 Texas, 233.

RAINEY, ASSOCIATE JUSTICE.—This is a contest for the office of county judge of Cass County, growing out of the general election of 1894.  There were twenty-two voting boxes in said county, from all of which returns were made to the Commissioners Court.  Four boxes were not counted, and on the face of the returns of the other eighteen boxes appellee was elected, and a certificate of election was issued to him by said court.  Appellant Henderson brought this suit for the office, attacking the action of the Commissioners Court in discarding the said four boxes, and claiming to be elected to said office.

Appellee admitted the election and the number of voting precincts, but claimed the Commissioners Court acted lawfully in rejecting the returns of the said four boxes.  Appellee also attacked the returns of some of the eighteen boxes, alleging that the count was not properly made, etc., and that upon a correct count of all the boxes he was entitled to the office, etc.

Appellant, in supplemental petition, pleaded "estoppel on appellee from going behind the returns from the eighteen boxes which were counted without objection by either party, and which forms the basis of the certificate given to appellee."

The court admitted the four boxes rejected by the Commissioners Court, but permitted the ballot box of Springdale precinct to be reopened and recounted, and therein found thirty-seven ballots for appellee which were not given him by the estimated returns of the Commissioners Court, thus electing appellee by seven majority.  The cause was tried without a jury, and the court rendered judgment accordingly

against appellant for all costs. Appellant filed motion for new trial, which was overruled, and this appeal duly taken.

The first assignment of error is not urged, and it will not be considered. The second assignment is as follows: "The court erred in sustaining defendant's exception to plaintiff's demurrer and plea of estoppel. Because defendant could not go behind the returns on which his title was based and endeavor to set aside returns and recount a ballot box, when such returns were duly returned as required by law, and were counted and estimated by the Commissioners Court in their award of office to him by issuing him the certificate of election. The record and pleadings show no complaint by plaintiff to any of said returns, and the defendant made no objection thereto until the filing of his answer in the nature of a confession and avoidance by a cross or counter contest. Judgment should have been rendered for plaintiff upon the admission and count of the four contested election returns."

In the case of Bridges v. Johnson, 69 Texas, 714, cited by appellant to sustain this contention, the court used the following language: "An estoppel in pais is the effect of the voluntary conduct of a party whereby he is precluded, both at law and in equity, from asserting the rights which perhaps might have otherwise existed, either of property, of contract or of remedy, as against another person who has, in good faith, relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract or of remedy. 2 Pomeroy's Equity, sec. 804."

Under the law it was the duty of the Commissioners Court to canvass the returns of election and issue a certificate in favor of the party shown to have been elected by the face of the returns. There is no evidence that appellee, by any improper act of his, influenced or attempted to influence the action of said court in giving the certificate, or that he caused appellant to change his position, and thereby acquired some "corresponding right, either of property, of contract, or of remedy."

The certificate of election was merely an evidence of right, and if a majority of votes were legally cast for appellee, he was entitled to the office, irrespective of the certificate, and it was immaterial upon what basis the Commissioners Court reached that result. The basis may have been wrong, yet, if the result was correct, appellee would not be estopped from showing it. Several cases are cited by appellant where there was an estoppel by judgment, but we are unable to see their application. The facts pleaded failed to show that appellee was estopped as claimed, therefore, the judgment of the court in overruling the demurrer was correct.

On the trial below the court, over the objection of appellant, permitted the Springdale box, which was one of the eighteen boxes counted by the Commissioners Court, to be reopened and the ballots recounted. Appellant, in his brief, insists upon two reasons why said box should not have been reopened and the ballots recounted: (1) "Because no such

defects existed in the returns from said box as to justify the opening of same." This objection can not be considered by this court, because it was not urged on the trial below. It is settled, that the ruling of the court upon the admission of evidence "must stand or fall upon the objection to the evidence urged against its admission." Davis v. State, 75 Texas, 420.

The second objection here urged by appellant to the admission of said box is, as shown by his bill of exceptions taken on the trial, "because it had been proved and was undisputed and admitted that the ballot box had been carried away by the county clerk, J. K. Oden, and opened by and before a committee of the Twenty-fourth Legislature, and the ballots taken out and counted by said committee and returned to the box, and the box again nailed up, by reason of which opening of the box and the counting of the ballots, it appears that the box was not in the same condition as when delivered to and deposited with the clerk, J. K. Oden."

In explanation of this action the court attached to said bill of exceptions the following: "I approve the above bill of exceptions, with the following explanation, and the evidence which was offered before the court: Before the defendant was allowed to open the box and count the ballots that the Springdale box contained, the defendant introduced the manager of the election at Springdale, and proved by him that after the said box had been by him securely fastened up on the evening that the election had been held, he delivered the box to Mr. Howdyshell, one of the clerks of said election, to be by him carried to Linden, and delivered to the proper officer under the law; and that the box then before the court was the box in which the ballots cast at said place was deposited after they were counted and delivered to Howdyshell. Then the said Howdyshell testified that he carried said box to Linden in the same condition it was in when it was delivered to him by said manager, and delivered it to the county clerk of said Cass County. The clerk testified that he had kept said box in an iron vault in his office, except when he carried it to Austin under an order of this court, to be examined by the legislative committee, and that he kept said box in his possession all the time on his trip to Austin, and while at Austin, and on his return from Austin, and that said committee opened said box in his presence and counted the votes in his presence, and replaced said ballots in his presence, just as they were when taken out; and when he returned to Linden with said box, he again locked it up in said vault, and that he knew that the tickets in said box had never been tampered with, and that they were the same tickets that said box contained when the said Howdyshell delivered it to him."

This statement embodies the material facts relative to the carrying of said box to Austin. The question here presented for determination is, was the evidence of such a character as warranted the trial judge in excluding the ballots from consideration in arriving at the result of the vote at that box? It is a question for the jury, or for the court when

the trial is without a jury, to determine, after hearing the evidence, whether or not the ballots have been changed, and which should be given the greater weight, the returns or the ballots. In discussing this question, Chief Justice Willie, in Owens v. Jennett, 64 Texas, 501, says: "We consider the following principles well settled: 1. That the returns are prima facie evidence of the result of an election. 2. That in a proper case the ballot boxes may be opened and the tickets counted to rebut the presumption in favor of the returns; and in case of a disagreement between the returns and the ballots, the latter must prevail as the best evidence of the will of the voters. 3. That in order to allow the ballots to prevail as against the returns, it must appear that they have been preserved by the proper officers as required by law, and have not been exposed to the reach of unauthorized persons so as to afford a reasonable probability of having been changed or tampered with. Hudson v. Solomon, 19 Kan., 177; People v. Livingston, 79 N. Y., 279; State v. Owens, 63 Texas, 261.

"Hence, it was proper for the jury to estimate by the returns when the proof showed that the boxes had been tampered with after the vote had been finally counted, and by the ballots when there was no satisfactory proof to this effect."

We are of the opinion that the evidence on this point fully warranted the court in admitting said box and ascertaining the result by a recount of the ballots. There is nothing in the evidence tending to show that any of said ballots had been altered or changed after having been deposited by the voters; nor are the circumstances surrounding the transaction of such probative force as to warrant the conclusion of the existence of a strong probability that the ballots were altered or changed. The utmost that can be said is, that there was a possible opportunity for it to be done. This is not sufficient to warrant a refusal to recount the ballots. Davis v. State, 75 Texas, 420.

The fact that there was a discrepancy between the returns and the recount as made by the court does not indicate that there was any alteration in the ballots after being voted, nor does it tend to cast suspicion thereon, when the evidence relating to the manner in which the count was made by the managers of the election is considered. When the count was concluded by them, there were discrepancies existing between the tally sheets of the different clerks of the election, which discrepancies were attempted to be reconciled by guessing at the result, and changes made accordingly, and it is evident from the evidence that it was impossible for the correct result to have been ascertained by such proceedings. If the ballots were not altered or changed after having been cast by the voters, appellee was entitled to have them recounted, and if upon a recount the result shows him to have received a majority of all the votes legally cast, justice demands that he be quieted in the enjoyment of his right to the office. The trial court had the witnesses before him, and occupied a position which better enabled him to arrive

at a correct solution of the evidence than this court. The evidence being amply sufficient, his ruling will not be disturbed.

We will now consider the third assignment of error, which is in effect, that the court erred in overruling appellant's motion for a new trial. Appellant, as a ground for a new trial, stated that he was surprised at the result of the recount of the ballots in the Springdale box; that thirty-three of the ballots which showed on recount to have been cast for appellee were in fact cast for appellant. The names of the parties whose ballots were alleged to have been changed were named in said motion, which was sworn to by appellant, and attached to said motion was the affidavit of said thirty-three parties, stating that they voted the populist ticket. It was also alleged in said motion that appellant did not know how these parties voted until after the trial. It is shown by bill of exception that on the trial, after the evidence was concluded by both sides, appellant asked the court to postpone further hearing "until he could hear from certain parties and voters at Springdale box and obtain their presence and testimony, that they did not vote the ballots counted and attributed to them, and that he hoped to get said witnesses as soon as they could ascertain what they could prove, and that said witnesses lived twenty-five miles from the court, but had never been subpoenaed." The court declined to postpone.

The evidence of these witnesses was not legitimate for the purpose of showing that they voted differently from the ballots accredited to them in order to change the count, as there was no allegation by appellant that warranted such proof; but such evidence was admissible for the purpose of showing that the ballots had been tampered with. Dunn v. Thompson, 30 S. W. Rep., 728; Owens v. State, 64 Texas, 500. As the testimony was admissible, appellant was entitled to a new trial, unless he was negligent in not producing said witnesses at the trial. The appellee had by allegations attacked the regularity of the returns of said Springdale box, which authorized a recount of the ballots, and by a counter affidavit in resistance to appellant's motion for new trial, showed the following facts: The Springdale box was carried to Austin more than six months prior to the trial hereof, and a recount of said box then made in the contest case of Frost v. O'Neal, in which contest the Springdale box was involved, and the same questions made in behalf of O'Neal as here made in behalf of appellant, with practically the same result, all of which appellant and his attorney had notice of. A memorial was sent to the Legislature with 155 names, voters at Springdale box, all of whom claimed to have voted the populist ticket.

Appellant's attorney had a copy of this, and advised appellant to have these parties present to testify, but no subpoenas were ever issued for any of said witnesses. The evidence on the trial showed that appellant and the populist ticket received at Springdale box 127 votes. The poll list was not introduced, and there was no evidence as to how the votes of the parties making the affidavits were counted, only the unsupported statement of appellant, his means of knowledge not being given. The

appellant was credited on the recount with the 127 votes as shown by the ballots.

The statement of facts shows that, on the trial appellant testified that he "heard of the legislative count of the Springdale box, that he was fully informed of this in February, 1895. That the legislative count of the Springdale box was practically the same as the recount had here on the trial of this cause. The count for county officers is practically the same as the count at Austin for the Legislature."

We think these facts fully show that appellant and his counsel were fully advised of the evidence claimed to have been newly discovered. If they did not actually know that the ballots of the said thirty-three parties had been changed as alleged, they certainly had sufficient notice to put them on inquiry, and which was sufficient to have caused them to have anticipated the very result that followed. The legislative committee by a recount had shown that the ballots did not correspond with the returns. The appellant knew the names of 155 persons who claimed to have voted appellant's party ticket, which parties he could have had present at the trial. Appellant's attorneys realized the necessity of having said witnesses at the trial, but no steps were taken to that end.

It is a well established rule in this State that "a new trial will not be granted on the ground of newly discovered evidence unless it is made to appear that it has come to the knowledge of the applicant since the trial; that it could not have been sooner discovered by the exercise of diligence; that it is not merely cumulative; that it is not for the purpose of impeachment." Conwill v. Railway, 85 Texas, 96. "To authorize granting a new trial on the ground of newly discovered evidence, it must appear that the party seeking it has exercised proper diligence, and that the failure to produce the evidence on the trial was not due to any neglect on his part." Johnson v. Flint, 75 Texas, 379.

The burden was on appellant to establish that the ballots had been tampered with, and he failed to use that diligence required by the law to produce the witnesses on the trial. No reasonable excuse is shown why the witnesses were not subpoenaed to attend the trial. Having failed to use the proper diligence, there was no error in the court's overruling appellant's motion for new trial.

The judgment of the court below is affirmed.

*Affirmed.*

Delivered January 25, 1896.