**WRIGHT v. MARQUIS.   (No. 7017.)**

(Court of Civil Appeals of Texas.   San An-
. tonio.  Nov. 7, 1923.)

**1. Elections ⬤➡293(2)—Declarations of elec-
tor permissible to show intention to make
home outside county.**

Declarations by a voter that he was go-
ing to remodel a house in another county, had
already furnished it, and would make it his
home, were permissible to show intention to
make the other county his permanent home
making his vote illegal.

**2. Elections ⬤➡71—Voter held domiciled out-
side precinct.**

Where the only home to which a voter could
go was that of his wife's father in another
county where the wife made her home, and he
had no fixed intention to build and establish a
home in the county of an election, his vote
in an election was illegal and properly deducted.

**3. Elections ⬤➡181—Ballot with printed name
of one candidate not erased and name of an-
other written not counted for either.**

In an election for but one person for com-
missioner, where underneath the printed name
of the candidate a voter wrote the name of
another, but the name of the candidate was not
erased, under Vernon's Sayles' Ann. Civ. St.
1914, art. 3012, such ballot could not be count-
ed for either.

**4. Elections ⬤➡180(6)—Misspelt written name
of candidate held not to invalidate ballot.**

Where there were but two candidates for
the office of commissioner of a precinct, the
writing of a candidate's name as "Maruuis"
*held* to be indicative of the voter's will to vote
for "Marquis," and the ballot was properly
counted for him.

**5. Elections ⬤➡180(1)—Legal ballot given ef-
fect if voter's will ascertained therefrom.**

If the will and desire of a voter can be
ascertained from the ballot, and no law is
infracted, the ballot should be given effect.

**6. Elections ⬤➡227(9)—Ballot of illiterate
voter improperly counted when statute not
complied with.**

Where Rev. St. art. 3003, relative to. as-
sistance to illiterate voters, was not complied
with, the ballot could not be counted.

Appeal from District Court, McMullen
County; T. M. Cox, Judge.

Suit by A. R. Marquis against C. B. Wright.
Judgment for plaintiff, and defendant ap-
peals.   Affirmed.

Dougherty, Dougherty & Tarlton, of Bee-
ville, and Frank H. Burmeister and R. R.
Smith, both of Jourdanton, for appellant.

H. S. Bonham and W. G. Gayle, both of
Beeville, for appellee.

FLY, C. J.  This is a suit contesting the
election for commissioner of precinct No. 4,
in McMullen county, instituted by appellee
against appellant.  The cause was tried be-
fore the court and judgment. rendered ad-
judging that appellee is entitled to the office.

The evidence showed that at the general
election held on November 7, 1922, appellant
was the Democratic candidate for the office
of commissioner' of precinct No. 4, in McMul-
len county, and his name as such candidate
was printed on the ballot.  The name of ap-
pellee did not appear on the official .ballot.
According to the official returns of the elec-
tion, appellant received 24. votes and appellee
20 votes.  The election was contested on the
ground that Julius Glau and wife, Mrs. Ellen
Pace, Avery Martin, Lionitis Muniez, John
Martin, and Antonio Hasette had cast illegal
votes for appellant.  The court found that the
votes of Julius Glau and wife were illegal
because they were not residents of McMullen
county; that the votes of Ellen Pace and
Avery Martin were illegal because they were
not residents of McMullen county.  The court
also held that a vote cast for A. R. Markuis
by J. M. Whitley was intended to be a vote
for A. R. Marquis, and should have been
counted for him; that the vote of Mrs. Mae
Hoegemeyer, who wrote the name of A. R.
Marquis in the proper place on the ballot
but did not scratch the printed name of appel-
lant, should have been counted for appellee;
that the vote of F. M. Galloway, who scratched
the name of appellant and wrote "A. R. Mar-
uuis" in the proper place, should have been
counted for appellee.  The conclusion of the
court, embodied in the judgment, was that
appellant received only 20 legal votes and
appellee 22 votes, and the latter was declared
the legally elected commissioner of .precinct
No. 4, McMullen county, Tex.  The effect of
the conclusions of the trial judge was to de-
duct the votes of Glau and wife, and Ellen
Pace and Avery Martin, from the votes count-
ed for appellant, and to add the two votes
of J. M. Whitley and Mae Hoegemeyer to
the votes that should be counted for appellee.

[1] There is sufficient evidence to sustain
the finding of the court that the Glaus had
abandoned McMullen county and had made
Bexar county their place of residence.  In
numerous conversations with different wit-
nesses Julius Glau said that he had bought
a home at San Jose, in Bexar county, and at
least one witness, Henry Caron, swore that
Glau had told him in 1921 that he had
bought a house, and "I am going to remodel
it—it is already furnished—and make it my
home."  He gave as his reason for this step
that his wife did not like to live in Lomo
Alto "because there were no conveniences
out there."  Lomo Alto is the place in Mc-
Mullen county where Glau owned a ranch.
He did buy the home in San Jose, and there
was evidence to substantiate his declaration
to W. D. Marquis that "he had bought a

good home up there and was going to make it his home the balance of his days; that he was getting too old to work on the farm." The declarations made by Glau to a number of witnesses were permissible as evidence tending to show that he intended to make San Jose his permanent home. The same applied with equal force to Mrs. Glau.

The court found that Mrs. Ellen Pace was not a resident of precinct No. 4, McMullen county, and consequently not entitled to vote in that precinct and county. We think there is evidence to sustain the ruling of the court. Mrs. Pace was shown by the evidence to be a peregrinator having no fixed place of abode, but living more in Atascosa than in McMullen county. We sustain the action of the court as to this voter.

[2] Avery Martin voted, as did the Glaus and Mrs. Pace, for appellant and the court rejected his vote on the ground that his residence was not in McMullen county. The facts are that Martin, who had been reared in McMullen county, in 1920 married a woman who had lived all her life in San Antonio, and continued to live there after she married Martin. He swore that for the first year and a half of his married life he was in business in San Antonio. He had no home in McMullen county, although he claimed to be a partner with his brother and that they had 30,000 acres of land leased for five years in McMullen county and that he had always paid his poll tax in that county. Martin admitted that he would have remained in business in San Antonio, if it had been remunerative. He would go from San Antonio to Tilden in McMullen county, and from there to Jourdanton, in Atascosa county, and then repeat the rounds. He had no house of his own, and the only home to which he could go was the home of his father-in-law in San Antonio, where his wife made her home. He did not intend to build a home in McMullen county, but had planned to get his landlord to build one. His plan had never materialized. The evidence failed to show any fixed intention upon the part of Martin to build a home and establish a home for himself and wife in McMullen county, and he had no domicile except the one in San Antonio, furnished by his wife through the grace of her father.

We are of opinion that the court properly deducted the four votes of Glau and wife, Ellen Pace and Avery Martin, from the votes cast for appellant.

[3] Four of the original ballots have been made a part of the statement of facts, and the ballot numbered 12, cast by J. M. Whitley, shows that underneath the printed name of C. B. Wright the voter wrote the name "A. R. Markuis"; but the name of Wright was not erased. We think the name "Markuis" was clearly intended for the name Marquis, but we do not think the vote should be counted on account of the failure to erase the name of Wright. It is provided in article 3012, Vernon-Sayles' Statutes:

"No ballot which is not numbered as provided in article 3005 shall be counted, nor shall either of two or more ballots folded together be counted, and where the names of two or more persons are upon a ballot for the same office, when but one person is to be elected to that office, such ballot shall not be counted for either of such persons."

The language is mandatory and imperative. The statute does not say that when two names are printed or two names are written upon a ballot it shall not be counted, nor does it intimate that where one name is printed and another name is written on the ballot by the voter it shall be counted for the man whose name is written, but "where the names of two or more persons are upon a ballot for the same office, when but one person is to be elected to that office, such ballot shall not be counted for either of such persons." It is true that the writing of the name may have indicated an intention to vote for the man whose name was written, but the intention of a voter cannot be permitted to set aside and render nugatory the plain provisions of the statute. Writing the name merely indicated that the voter may have desired to vote for the man whose name he had written; in other words, it was mere evidence of intention, and if two names had been printed on the ticket and in a contest a voter had sworn that he intended to vote for one of them, his testimony, if credited, might establish an excuse to destroy the statute and allow the intention to a voter to supplant and override it. It would be a dangerous precedent. Huff v. Duffield (Tex. Civ. App.) 251 S. W. 298.

In the case of Mrs. Hoegemeyer the name of A. R. Marquis was written in the proper place in the "Independent" column, but the printed name of C. B. Wright in the "Democratic," column was not erased. The ballot was improperly counted for appellee, as hereinbefore indicated.

In section 538 of McCrary on Elections, a California case, Kirk v. Rhoads, 46 Cal. 398, is cited, and we think, as does that author, that as to those things over which the voter has control the law is mandatory as to ballots, and that as to such things as are not under his control it should be held to be directory only. "But if the elector willfully neglects to comply with requirements over which he has control, such as seeing that the ballot, when delivered to the election officers, is not so marked that it may be identified, the ballot should be rejected." In line with that rule, it has been held in different states that if a ballot contains the names of more persons than are to be voted for for a specified office, it is void as to that

office and must be rejected. It has been held that in the absence of a law where a voter has written a name of a particular candidate and has 'not erased the printed name for the same office, the written name will be counted. "But when the statute of a state provides that if more persons are designated for an office than there are candidates to be elected, such part of the ticket shall not be counted, the statute will govern; and if a voter fails to erase the printed name of a candidate and writes under it the name of another person for the same office, the ballot shall not be counted for either." McCrary on Elections, §§ 532, 533, 543; Blankinship v. Israel, 132 Ill. 514, 24 N. E. 615.

[4, 5] F. M. Galloway voted ballot No. 16, and erased the printed name of C. B. Wright and wrote thereunder the name "A. R. Maruuis." We think it clear that it was the intention of the voter to cast his ballot for A. R. Marquis. It was shown that there were only two candidates for the office of commissioner of precinct No. 4, and no doubt can exist that the voter intended to vote for one of them, and the misspelt name indicates the person desired for the office. We think the ballot was properly counted for A. R. Marquis. The ballot is indicative of the will of the voter. The law does not require that it should be accurately or nicely written, or that the name of the candidate voted for should be correctly spelled. If the will and desire of the voter can be ascertained from the ballot, and no law is infracted, the ballot should be given effect.

[6] In spite of the fact that Lionitis Muniez who voted for appellant, strenuously and vigorously denied that he had ever at any •time resided in McMullen county, his vote was counted for appellant. This action is attacked, through a cross-assignment of error by appellee. The voter reiterated and insisted that he lived in Live Oak county, that his home was there and had been for five years, and that he went to McMullen and other counties and obtained work, and when out of a job he always went back to his home in Live Oak county. He stated that he did not want to vote, because not a citizen of McMullen county, but had been persuaded to vote by a man who promised protection to him. That man failed to testify. The vote of Muniez should not have been counted, and without his vote appellant had only 19 votes. The vote should not only not have been counted because Muniez lived in Live Oak county, but because the law was ignored in preparing the ballot for him. Article 3003, Revised Statutes. No pretense was made that the requirements of the statutes were complied with.

The evidence showing that appellee received 20 legal votes and appellant only 19, the judgment will be affirmed.