**DAVIS v. WALCOTT.**

No. 10114.

Court of Civil Appeals of Texas. San Antonio.

Sept. 30, 1936.

Rehearing Denied Oct. 5, 1936.

Ditzler H. Jones, of Uvalde, for appellant.

Morriss & Morriss, of San Antonio, for appellee.

MURRAY, Justice.

This is an election contest instituted in the district court of Uvalde county by M. B. Walcott, as contestant, against Bob Davis, as contestee, seeking to set aside a certificate of nomination issued by the proper authority of the Democratic Party declaring Bob Davis to be the Democratic nominee for the office of county judge of Uvalde county, and to have himself declared to be such nominee.

Walcott and Davis were opposing candidates, and the only candidates, for the Democratic nomination for the office of county judge of Uvalde county, at the Democratic primary election held on July 25, 1936. According to the official returns, Davis received 1,335 votes and Walcott 1,333 votes, thus giving Davis the nomination by a majority of two votes.

Upon a hearing it was found by the trial judge that there was an error in the count of three votes, which would reduce Davis's vote to 1,332. It was further found that 85 votes which had been cast for Davis were illegal votes and should also be deducted, which left Davis with a vote of 1,247. It was further found that 55 votes which were cast for Walcott were illegal votes and should be deduct-ed, which left Walcott with a total vote of 1,278, and a majority of 31 votes. Accordingly, judgment was entered declaring Walcott to be the Democratic nominee for the office of county judge of Uvalde county, and entitled to have his name printed upon the official ballot of the General Election to be held on November 3, 1936, from which judgment Bob Davis has prosecuted this appeal.

The contention is here presented by the appellant, Davis, that 48 votes were counted for appellee, Walcott, which should have been declared to be illegal votes and not counted for any one, because said ballots were not signed by the presiding judge of the election. The case is submitted upon an agreed statement of facts, in which it is agreed that these 48 unsigned ballots are ballots cast by absent voters, and that they were in every way legal votes but for the fact that they were not signed by the presiding judge.

It is well established in this state that, as a general rule, where a ballot is not signed by the presiding judge, such a ballot cannot be counted for any one. This is the mandatory provision of Article 3018, R.S.1925. However, the question here presented is: Does this rule apply to votes cast by absent voters?

At the time of the adoption of article 3018 absentee voting was not authorized in this state, and there can be no question but that it was originally intended to apply to voters personally appearing at the polls and casting their ballots. Articles 3008, 3012, and 3018, R.S.1925, deal with the subject and should be construed together. Article 3008 provides in part: "And shall at the same time deliver to him [the voter] one official ballot on the blank side of which the presiding judge shall have previously written his signature." Article 3012 provides in part: "When a citizen shall have prepared his ballot, he shall fold the same so as to conceal the printing thereon, and so as to expose the signature of the presiding judge on the blank side, and shall, after leaving the booth, hand to the numbering judge his ballot." Article 3018 provides in part: "The counting judges and clerks shall familiarize themselves with the signature of the judge who writes his name on each ballot that is voted, and shall count no ballot where two or more are folded together, or that does not bear the judge's signature," etc.

■ It is clear from the above that a voter who goes to the polls to vote has an opportunity and in fact it is his duty to see that the presiding judge has signed the ballot given him to use in voting. If it is not signed, he should demand that it be signed. Quite the opposite is true of an absentee voter. He is not present when his vote is cast. He never comes in contact with the presiding judge. His ballot is sent through the mail. He may be in a distant state on election day. He certainly has no opportunity to see whether or not the presiding judge does his duty and signs the ballot before depositing it in the ballot box. An absentee voter is in no way charged with the responsibility of seeing that the presiding judge does what the law requires of him. Thus, we can see a very good reason for applying the penalty prescribed in article 3018 to a voter who is present at the polls and not applying it to an absentee voter. Duties required of voters are generally declared to be mandatory, while duties required of election officers, over which a voter has no control and no opportunity to see that the same is performed, are generally construed to be directory. McCrary on Elections (4th Ed.) § 724, reads as follows: "The decisions cited in the preceding sections upon the question whether the provisions of the law are mandatory or directory are not entirely harmonious. They, however, disclose a well-defined disposition on the part of the courts to distinguish between acts to be performed by the voters, and those devolving upon the public officials charged with the conduct of the election. The weight of authority is clearly in favor of holding the voter, on the one hand, to a strict performance of those things which the law requires of him, and on the other of relieving him from the consequence of a failure on the part of election officers to perform their duties according to the letter of the statute where such failure has not prevented a fair election. The justice of this rule is apparent, and it may be said to be the underlying principle to be applied in determining this question. The requirements of the law upon the elector are in the interest of pure elections, and should be complied with at least in substance, but to disfranchise the voter because of the mistakes or omissions of election officers would be to put him entirely at the mercy of political manipulators. The performance by the election officers of the duties imposed upon them can be reasonably well secured by providing a penalty for failure so to do."

Again, the statute on absentee voting is full and complete and nowhere provides that an absentee vote not signed by the presiding judge shall not be counted. This statute, article 2956, R.S.1925, as amended (Vernon's Ann.Civ.St. art. 2956), goes into the minutest detail as to just how an absentee vote shall be prepared and cast, and specifically provides when such a vote shall be rejected, but does not include the failure of the presiding judge to sign such a ballot as a reason for rejecting an absentee vote.

The exact question here presented has not been decided in this state, but it has been decided in at least two other states under similar statutes to those in effect in this state. Stepp v. Board of Canvassers, 98 W.Va. 41, 126 S.E. 708; State v. Barnett, 182 Wis. 114, 195 N.W. 707.

■ We are of the opinion that the provision of the absentee voters statute which requires the presiding judge to sign such absentee ballots is only directory as being a duty required of an election officer over which an absentee voter has no control and no opportunity to see that the duty is performed. We further conclude that the penalty provided for in article 3018 does not apply to ballots cast by absent voters.

It therefore follows that the trial judge properly counted these 48 absentee votes for appellee, Walcott, and finding no error in the record, the judgment is affirmed.

That this contest may be finally disposed of before it becomes moot, appellant will be allowed three days within which to file a motion for a rehearing.

Affirmed.

SMITH, C. J., did not participate in the decision of this case.