M. M. VICARS, Contestee, and Robert Run-yon et al., Interveners, Appellants,

v.

H. L. STOKELY, Contestant, Appellee.

No. 13126.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 24, 1956.

Rehearing Denied Nov. 21, 1956.

Sharpe, Cunningham & Garza, Alan F. Lippman, Brownsville, for appellants.

Cox, Wagner, Adams & Wilson, Jack Wiech, Brownsville, for appellee.

POPE, Justice.

This is an election contest. H. L. Stokely, incumbent, and M. M. Vicars were opposing candidates for the office of Mayor of the City of Brownsville. The election was held on November 1, 1955, and the official canvass of the returns showed that Vicars received 2355 votes, Stokely received 2338, and other persons received six votes. Vicars was declared winner with a majority of eleven votes. Stokely filed this contest, and after a thorough hearing, which included the opening of all the ballot and stub boxes, the trial court declared contestant Stokely the winner, 2,164 votes being for Stokely, 2,103 votes for Vicars, and four votes for other persons. Stokely won with a majority of fifty-seven votes. Vicars superseded the judgment and is serving as Mayor of Brownsville.

Contestant Stokely's main complaint in the contest was that the ballots were not uniformly counted in all the precincts because of the unorthodox ballot used in the election. A sample ballot is set forth in the footnote.[1] The third column, instead of providing a space for a "write-in" candidate, contained the command, "Write In Candidates." The result was that many

---

[1] No. 0000

No. 0000

General City Election
November 1, 1955

Note: Voter's signature to be affixed on reverse side.

**Sample Ballot**

| Administration Ticket | Independent Candidates | Write In Candidates |
|---|---|---|
| For Mayor: | For Mayor: | For Mayor |
| H. L. Stokely | M. M. Vicars | |
| For Commissioner No. 1: | For Commissioner No. 1: | For Commissioner No. 1: |
| J. D. White | Miguel (Mike) P. Cortinas, Jr. | |
| For Commissioner No. 2: | For Commissioner No. 2: | For Commissioner No. 2: |
| J. A. (Alex) Garcia | Robert Runyon | |
| For Commissioner No. 3: | For Commissioner No. 3: | For Commissioner No. 3: |
| W. Travis Jennings | Manuel Diaz de Leon | |
| For Commissioner No. 4: | For Commissioner No. 4: | For Commissioner No. 4: |
| Dr. Calderoni | Norbert P. Betz | |

voters wrote the name of either Stokely or Vicars in the third column. Many voters then failed to scratch the printed name of the opposing candidate. The result was that many ballots contained an unscratched printed name and the name of one candidate written in longhand. For convenience, the trial court designated the ballots by three distinguishing terms. "Unscratched write-in" ballots were those on which a candidate's name was written in the third column, but no printed name was scratched. The trial court treated those ballots as invalid and did not count them. Art. 8.21, V.A.T.S. Election Code. "Vicars-Vicars" ballots were those which had Vicar's name written in the third column and Stokely's name was scratched. "Stokely-Stokely" ballots were those which had Stokely's name written in the third column and Vicars' name was scratched. The trial court counted the two latter types of ballots.

Contestee, Vicars, has many points complaining of the court's rulings on individual votes. Our first inquiry concerns contestee's point that the court erred in opening the boxes. Prior to ordering the boxes opened, evidence showed that the "unscratched write-in ballots" were treated differently by the various precincts. Seven precincts counted the ballots. In four of the precincts, the same kind of ballots were not counted. More than two hundred ballots of this kind were involved. There was proof that the same kind of ballots were treated differently in the eleven boxes.

■ Both parties agree that the "unscratched write-in" ballots were illegal, since two unscratched names appeared on the ballots. Art. 8.21, Election Code, Vernon's Ann.Civ.Stats.; Mullins v. Powell, Tex.Civ.App., 273 S.W.2d 633; Roberts v. Epperson, Tex.Civ.App., 288 S.W. 595; Johnston v. Peters, Tex.Civ.App., 260 S.W. 911; Wright v. Marquis, Tex.Civ. App., 255 S.W. 637. With the vote so close between the candidates, with 200 votes subject to the charge that they were illegal, and with some thirty or forty other votes in question, the court did not abuse its discretion in ordering the boxes opened and recounted. State ex rel. Lukovich v. Johnston, 228 S.W.2d 327; Sewell v. Chambers, Tex.Civ.App., 209 S.W.2d 363; Meriwether v. Stanfield, Tex.Civ.App., 196 S.W.2d 704.

Contestee, Vicars, opposed opening the boxes and contended that their careless custody after the election, had exposed them to the probability of tampering. The election code provides that after an election the ballot boxes, stub boxes, and keys are to be delivered to certain different and designated custodians. The custody of these items was carefully traced and exhaustive testimony was adduced both challenging and protecting the integrity of the ballots. The trial court found as a fact:

"That after the votes were so counted in each voting precinct in said Election for Mayor of the City of Brownsville, Texas, held on November 1, 1955, the ballots voted and used in said election were placed in ballot boxes in said voting precincts, each respectively, and thereafter said ballots, together with the stubs, have been kept securely, and have not been tampered with, and are genuine, and are in the same condition as they were when cast, and the stubs, as when deposited in the stub boxes."

■ This finding, together with the careful and minute investigation touching the preservation of the boxes, stubs, and keys, must be upheld. The pertinent provisions of the Election Code are directory. Lightner v. McCord, Tex.Civ.App., 151 S. W.2d 362; Fugate v. Johnston, Tex.Civ. App., 251 S.W.2d 792. Two other findings were that the boxes had been exposed to interference by interested persons. Taking the findings together and in support of the judgment, it follows that the trial court found that, though the boxes were exposed, the full evidence showed that they were in fact undisturbed. The record supports that conclusion. The Su-

premr Court in Davis v. State, 75 Tex. 420, 12 S.W. 957, 959, stated: "The testimony tended to show a possible opportunity for tampering with the boxes; but we do not think this sufficient to warrant a refusal to recount the ballots." Accord, Ramsay v. Wilhelm, Tex.Civ.App., 52 S.W. 2d 757; Gray v. State, 92 Tex. 396, 49 S.W. 217; Henderson v. Albright, 12 Tex. Civ.App. 368, 34 S.W. 992. The court properly ordered the boxes opened.

Vicars' next point is that the court erred in permitting Stokely to file amended pleadings. He argues that, even though the boxes were opened, the court should have restricted the inquiry to those matters which Stokely asserted in his original grounds. When the boxes were opened, it was discovered that many other votes, both those for Vicars and those for Stokely, were illegal, chiefly because the stubs were not signed. There were enough of these votes to control the election. Vicars takes the position that the court was limited to the grounds asserted in the grounds stated at the time the boxes were opened, but that the court erred in permitting amendments to the pleadings after the boxes were opened.

■ The court did not abuse its discretion in permitting the amendments after the boxes were opened, for several reasons. The trial court did not commit error because Article 13.30(7), Election Code, grants the trial judge "wide discretion as to matters of pleading, procedure and admissibility of evidence". The reason which the code gives for that broad discretion is "to subserve the ends of justice, rather than strict compliance with technical rules of pleading, procedure, and evidence." See also, Art. 9.08, Election Code; Rules 62, 63, T.R.C.P. The trial court did not abuse the exercise of discretion nor defeat the ends of justice by permitting an amendment which required a true count after discovering a substantial number of illegal ballots. Bailey v. Fly, 97 Tex. 425, 79 S.

W. 299; Meriwether v. Stanfield, Tex.Civ. App., 196 S.W.2d 704; Hutson v. Smith, Tex.Civ.App., 191 S.W.2d 779; Butcher v. Tinkle, Tex.Civ.App., 183 S.W.2d 227; Wilburn v. Galloway, Tex.Civ.App., 179 S.W.2d 540; Rogers v. Smith, Tex.Civ. App., 119 S.W.2d 678; Lightner v. McCord, Tex.Civ.App., 151 S.W.2d 362, 363.

■ Stokely's pleadings, upon which the contest commenced, contained a prayer that the returns of the election be set aside, and "that the ballot boxes be opened by the Court, that the votes be counted, that all illegal and fraudulent votes cast in such election for said M. M. Vicars be subtracted * * * that all valid and legal votes cast for said H. L. Stokely that were not counted * * * be added to the poll of H. L. Stokely, and that after due hearing of this election contest, and after a correct count, tally and return * * * the Court announce the true result * * *." Contestee, Vicars, opposed the opening of any of the ballot boxes, but insisted before the trial court, that "if any box is opened, that all of the ballots in that particular box should be examined * * *." The record shows that, over contestant's strong objection, contestee urged the trial court to match the stubs with the ballots. The court, in deference to the strong insistence of contestee, ordered the tedious and time-consuming task of matching the ballots and stubs for more than four thousand ballots in all the eleven precincts. The results prior to the investigation of stubs were unfavorable to contestee, who had already lost ground. The ensuing stub investigation further strengthened contestant's position. Contestee will not be heard to complain that the court erred in doing what he had urged the court to do. The court did not err in permitting the amendments to conform to the things proved.

■ Unsigned stubs were treated as invalid votes, by which contestee lost 164 votes and contestant lost 112 votes. This

constituted a gain of fifty-two votes for Stokely. The unsigned stubs were invalid, and the trial court so treated them. Art. 8.15, Election Code, makes mandatory that the voter sign his stub when he votes in person. 15–B Tex.Jur., Elections, § 119; State ex rel. Barry v. Connor, 86 Tex. 133, 23 S.W. 1103. Accord, Miller v. Coffee, 118 Tex. 381, 15 S.W.2d 1036; Gross v. Helton, Ky., 267 S.W.2d 67. This procedure in voting is in keeping with the objectives sought by the Code. Arts. 1 and 6.05, Election Code.[2] A voter must strictly conform to those things which he is required by statute to do. "The weight of authority is clearly in favor of holding the voter, on the one hand, to a strict performance of those things which the law requires of him, and on the other of relieving him from the consequence of a failure on the part of election officers to perform their duties according to the letter of the statute where such failure has not prevented a fair election." McCrary, Elections, (4th Ed.) § 724; Davis v. Walcott, Tex.Civ.App., 96 S.W.2d 817. To hold that a voter's signature on the stub is unnecessary would be to repeal the secret ballot law of Texas, which the Legislature has enacted.

At this point, contestant, Stokely, maintained a majority of fifty-seven votes over contestee, Vicars. Vicars urges that thirty-five votes were invalidly counted for Stokely. That many voters, instead of scratching individual names on the ballot, drew an X or otherwise marked through all the names listed in the column designated "Independent Candidates." Vicars' argument is that unless the lines actually touched the name "Vicars" it was not effective to scratch out his name, and the ballot would then contain the unscratched names of both Stokely and Vicars. The argument is not sound. Art. 6.06 of the Election Code permits a voter who desires to vote a ticket straight, to run a pencil or pen through all other tickets. The vot-

ers did that. Vicars reasons, however, that he was not running on a ticket, but as an independent candidate. His pleadings and adequate testimony show that the "Independent Candidates" campaigned and ran as a ticket. The most compelling reason that these votes should not be subtracted from Stokely's majority is that the court counted more of the same kind of votes for Vicars than for Stokely. If Stokely loses this kind of votes, Vicars would correspondingly lose even more.

Eighteen other votes for Stokely were challenged on the grounds that the voters indicated their choice by using a check or X mark, though there was no square space beside the name in which the voters could make their X or check. The intent of the voter is manifested clearly enough, but it is urged that the absence of a square space on the ballot destroyed the votes. The ballots used in the election were inartistically prepared. Art. 6.05, Election Code, provides for ballots which contain a square beside the names on the ballot. Art. 6.06, authorizes a voter to place a plus sign or an X or any mark which clearly shows his intention in the square beside the name. The intent of the voter is of compelling importance, and the fact that the form of the ballot was wrong does not invalidate the votes. Darby v. State ex rel. McCollough, Fla., 75 So. 411; State ex rel. Carpenter v. Barber, Fla., 198 So. 49.

Several voters who lived in Precinct 12 had poll tax receipts which showed they lived in Precinct 16. They in fact lived within the city limits, though the tax-assessor had experienced difficulty in ascertaining the true precinct boundaries by reason of an annexation election. A similar situation existed concerning three voters in Precinct 38. In our opinion, the mistake on the poll tax receipts was. occasioned by an innocent mistake and confusion about the boundary lines. Graham

---

2. McCall, History of Texas Election Laws, 9 Vernon's Ann.Civ.Stats., pp. XXVIII, XXIX.

v. Villareal, Tex.Civ.App., 242 S.W.2d 258; Tondre v. Hensley, Tex.Civ.App., 223 S.W.2d 671. The votes should have been counted for Vicars. However, these and the rest of the questioned votes are not sufficient to overcome the majority maintained by Stokely.

The judgment is affirmed.

W. O. MURRAY, Chief Justice (dissenting).

It appears from the ninth paragraph of the judgment that when the ballot boxes were opened it was discovered that 300 stubs in the various stub boxes were not signed by any voter. Twenty-four of the ballots with unsigned stubs were declared to be illegal, because not properly marked, 112 were votes for contestant, and 164 were votes for contestee, thus contestee had a net loss of 52 votes because of unsigned stubs, sufficient to change the result of the election.

Art. 8.15, Vernon's Election Code, provides that the voter shall sign his stub and place it in the stub box. This article further provides: "* * * and unless the ballot is deposited in such ballot box and the stub in the stub box by the voter in person, the same shall not be counted as a vote in such election." The article does not declare expressly that if the voter fails to sign his stub the ballot shall not be counted. It is apparent that the trial judge held that the signing of his stub by the voter is a mandatory provision, and refused to count ballots with unsigned stubs. In my opinion this was error.

These votes were regular in every respect, with the one exception that the voter failed to sign his stub. There is no allegation or proof that these votes were fraudulent or illegal in any other respect. What is said in 15-B Tex.Jur. 478, § 110, is here applicable:

> Where the law commands that under named conditions certain ballots shall not be counted, it must be followed. However, in order to justify the court in rejecting the ballots of voters who have voted fairly and in good faith to fill an office which the law requires to be filled, nothing short of a clear legislative command will suffice. A voter should not be disenfranchised by legal implication where there is no such command."

See also, Sanchez v. Bravo (Solis v. Dominguez, Tex.Civ.App., 251 S.W.2d 935; Longoria v. Longoria, Tex.Civ.App., 251 S.W.2d 939; Baker v. Scranton Independent School Dist., Tex.Civ.App., 287 S.W.2d 210; Mullins v. Powell, Tex.Civ. App., 273 S.W.2d 633; Graham v. Villareal, Tex.Civ.App., 242 S.W.2d 258; Fugate v. Johnston, Tex.Civ.App., 251 S.W. 2d 792; McCrary on Elections, 4th Ed., p. 168, §§ 225, 226; Art. 1.01 and Art. 8.21 Vernon's Election Code; Fox v. Nail, 294 S.W.2d 407, a recent opinion by the El Paso Court of Civil Appeals, delivered on October 2, 1956.

As to this matter being presented by fundamental error, see Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979.

I respectfully dissent.

On Motion for Rehearing.

NORVELL, Justice.

Perhaps the most important question in this case is that relating to the trial court's action in permitting contestant to file a trial amendment, asserting that some 164 votes had been improperly counted for Vicars because it appeared that the stubs for these ballots had no signatures, as required by Article 8.15 of the Election Code. The propriety of this action and the scope of the trial court's discretion with reference thereto is fully discussed in the original opinion filed herein and further comment is deemed unnecessary.

Upon rehearing, however, appellant Vicars takes a position which is hardly em-

braced within the original points of error filed herein, despite his specific reference to points Nos. 5, 6, 27, 28 and 30, as raising the contention. The motion follows the reasoning of the dissenting opinion based upon the theory of "fundamental error," which asserts the proposition that the trial court erred in refusing to count some 276 votes (164 for Vicars and 112 for Stokely) because the corresponding stubs to the ballots were wholly blank, that is, not signed by the purported voter nor by anyone acting in his behalf, as required by Article 8.15 of the Election Code. The principal argument advanced is predicated upon the failure of the Legislature to specifically provide that when the voter fails to sign the stub his vote shall not be counted. We do not regard this failure or omission in wording as being of controlling importance.

As pointed out in the original opinion, there is a rule of general application which holds the voter strictly accountable for his failure to conform with the requirements which an election law or code places upon him. There is some appeal to a natural sense of justice in saying that if the citizen loses his vote by his own wilful failure to follow the rules prescribed for voting, he has only himself to blame. However, there is a more vital and fundamental consideration operating here. One of the stated designs of our election code is to "safeguard the purity of the ballot box against error, fraud, mistake and corruption." Mr. Justice McCall of the Supreme Court, who served as Chairman of the Commission created by the Fifty-first Legislature to recodify and revise the Texas election laws, describes the detachable stub ballot law of 1949 as being "the most significant change in election procedure for many years." McCall, History of Texas Election Laws, Vernon's Ann.Tex. Election Code. Its purpose, as made abundantly clear by the emergency clause, was to change the theretofore existing "system of numbering ballots with corresponding numbers on polling lists," and thus insure a secret ballot and prevent election frauds.

Article 6.05, Vernon's Tex. Election Code, largely taken from the 1949 enactment, Acts 51st Leg., ch. 329, p. 615, provides that each ballot shall have as a part thereof, a detachable stub formed by a perforated line upon which shall be printed the number of the ballot and the words, "Note: Voter's Signature to be Affixed on Reverse Side."

The election judge is specifically directed to "thoroughly disarrange and mix the ballots so that they no longer are in consecutive numbered sequence or in any sequence of arithmetic or geometric progression, and then place the ballots face down in a stack or stacks from which each voter shall be allowed to take his own ballot without the number being known to or written down in any manner by the election judge." Article 8.11, Vernon's Tex. Election Code. After voting, the signed stub is detached from the ballot and the ballot placed in a box and the stub in another and separate box. Article 8.15, Vernon's Tex. Election Code.

It is readily apparent that the purpose of the stub ballot law is to prevent the identity of a voter who cast a particular ballot from becoming known either from the use of a poll list or from any method other than that of matching a *signed* stub with a ballot bearing an identical number. It is likewise equally clear that the Legislature intended that when pertinent in an election contest, a court would have a means of ascertaining the identity of the voter who cast a particular ballot, by matching the stub with the ballot. It was not the purpose of the stub ballot law to render election contests impossible, for that would obviously encourage and invite ballot stuffing and kindred election frauds. In this particular case, the district judge upon opening the ballot boxes found almost 300 ballots placed in the ballot boxes by some person or persons who can not be identified. If

the stub to ballot numbered 306, for instance, is not signed, the identity of the person who placed that ballot in the ballot box is for all reasonably practical purposes, wholly unascertainable. Whether this ballot was placed in the box by a legal voter, an alien, an unpardoned convict, a corrupt ballot stuffer, a wandering child, or any other person who by chance, design or otherwise may have had access to a ballot, must remain forever a mystery. When the scheme of plan of the stub ballot law is considered with its obvious purpose of protecting the secrecy of the ballot, on the one hand, and preventing election frauds, on the other, the verity of this statement contained in the original opinion seems apparent: "To hold that a voter's signature on the stub is unnecessary would be to repeal the secret ballot law of Texas, which the Legislature has enacted." Without the mandatory requirement of a signed stub, the law becomes a farce. Instead of providing for the purity of the ballot, it becomes an invitation to corruption. No district judge upon finding hundreds of ballots and knowing not from whence they came, should be required to afford them authenticity. If such action be required we might well ask, Why have a stub at all?

Fox v. Nail, 294 S.W.2d 407, by the El Paso Court, seemingly places the matter of counting ballots with unsigned stubs within the discretion of the trial court and may not for that reason conflict directly with our decision. However, for the purpose of clarity, we should perhaps say that, in our opinion, the cited case of Fugate v. Johnson, Tex.Civ.App., 251 S.W.2d 792, by this Court, does not support the broad proposition that ballots with wholly unsigned stubs may nevertheless be counted. In the Fugate case the question related to the validity of a ballot when the stub was not signed personally by the voter, and it was pointed out that Article 8.15, Vernon's Tex. Election Code, authorizes the signing of a stub by one other than a voter under certain conditions. 251 S.W.2d loc.cit. 794.

The motion for rehearing is overruled.