James **BAGLEY** et al., Appellants,

v.

**Lowell HOLT, as District Attorney for Upshur County, Texas, Appellee.**

No. 7875.

Court of Civil Appeals of Texas.

Texarkana.

July 23, 1968.

Rehearing Denied Aug. 20, 1968.

Joe P. Taylor, Jr., Wm. C. Martin, III, DeWitt & Martin, Longview, for appellants.

Welby K. Parish, Gilmer, for appellee.

PER CURIAM.

The appellant's brief contains a statement of the nature of this case that appears so complete, fair and accurate that it is, with slight elision, adopted for the purposes of this opinion and quoted next:

"This is an appeal under Article 9.17 of the Texas Election Code, as amended, from the judgment upon a school consolidation election contest tried without a jury before the 115th Judicial District Court of Upshur County, Texas, and is based in part on the findings of fact filed by the Trial Court at the request of Appellants and in part upon the Statement of Facts filed herein. It alleges three points of error involving four votes originally cast and counted AGAINST CONSOLIDATION and one vote originally cast and counted FOR CONSOLIDATION. All three points of error involve separate, * * * questions concerning the application of art. 815 of the Texas Election Code, as amended, i. e., the 'stub-ballot law'.

"The contest was brought by four members of the former Board of Trustees of the East Mountain Independent School District, No. 907, as Contestants, against the District Attorney for Upshur County, Texas, as Contestee, to set aside the results of an election held on April 15, 1967 in the East Mountain Independent School District on the proposition of consolidation of that school district with the Gilmer Independent School District. The order of the Upshur County Commissioner's Court declaring results of election and consolidating school districts, entered on April 18, 1967, * * * showed that 760 ballots were cast and counted, of which 381 were cast and counted for consolidation and 379 cast and counted against consolidation. The Trial Court entered judgment on August 1, 1967, reciting that 717 legal votes were cast, of which 359 were cast for consolidation and 358 were cast against consolidation. From that judgment, Appellants have perfected their appeal.

"Since all of Appellants' points of error stem from the actions of the Trial Court after the opening of the stub and ballot boxes, a summary of the procedure followed in the conduct of the contest is necessary to an understanding of the Trial Court's rulings.

"In the discretion of the Trial Court under art. 9.08 of the Texas Election Code, as amended, the contest was conducted in the following manner:

"The Contestants produced evidence on their challenges which involved qualifications of voters and other irregularities discoverable by testimony or by other means than the opening of the stub and ballot boxes.

"Then, Contestee produced evidence on his challenges of the same nature, and Contestants produced rebuttal evidence.

"After the Trial Court entered his order sustaining or overruling the challenges of the Contestants and Contestee, he proceeded to open the stub boxes, check the total number of stubs representing the votes cast against the number of voters whose names were on the poll list, and remove the stubs of those voters to whose votes challenges had been sustained and any stubs on which there was no signature. The trial court then opened the ballot boxes and removed the ballots corresponding to the stubs removed and determined how each ballot was cast so that he could eventually deduct it from

the votes counted for or against consolidation, as appropriate.

"In the course of this procedure after the opening of the stub and ballot boxes, the Trial Court discovered nine unsigned stubs, corresponding to one ballot originally cast and counted for consolidation and eight ballots originally cast and counted against consolidation. Three of the voters whose stubs were unmarked had signed their names across the front of the ballot itself. The Trial Court ultimately sustained Contestee's challenges to these three ballots, which are the subject of Point of Error One. The Trial Court also discovered a stub marked with an "X" and the name of the election judge. The Court ultimately overruled Contestants' challenge to this ballot, which is the subject of Point of Error Two. The Trial Court reserved final decision on the contest pending argument on the challenges made after opening the stub and ballot boxes and recessed so that counsel could prepare their authorities on the questions presented by these ballots.

"Upon reconvening, the Trial Court reopened the stub and ballot boxes and recorded the votes of those voters to whose qualifications the challenges had been overruled so that, in the event of an appeal, the Appellate Court could render judgment. In connection with this process, counsel were allowed to examine the mutilated ballot envelopes in each box; whereupon counsel for Contestee challenged the stub signed by a married woman with her husband's initials and surname. This challenge was ultimately sustained by the Trial Court and is the subject of Point of Error Three.

"Since the judgment of the Trial Court was that the proposition FOR CONSOLIDATION carried by one vote, if this Honorable Court sustains any one or more of Appellants' points of error herein, consolidation will have failed to carry, and the judgment of the Trial Court must be reversed and rendered."

Electors participating in the election cast ballots 759, 794, and 806 against consolidation. The signature of the voter casting each of these ballots was not affixed to the corresponding ballot stub. Instead, in each instance the voter placed his signature upon the ballot. Ballots could be and were identified by reference to the signatures. The trial court ruled the three ballots void and deducted their total from the total of votes cast against consolidation. The trial court's action is presented for review by appellants' point of error number one.

In Vicars v. Stokely, 296 S.W.2d 599 (Tex.Civ.App.—San Antonio 1956, writ ref'd, n. r. e.), the majority opinion held certain cast ballots invalid when corresponding stubs from the ballots did not bear the signature of the voter. The author stated that the law, Tex. Election Code Ann. art. 8.15, made it mandatory that a voter sign his ballot stub when he voted in person. This opinion then says:

" * * * This procedure in voting is in keeping with the objectives sought by the Code. Arts. 1 and 6.05, Election Code. A voter must strictly conform to those things which he is required by statute to do. 'The weight of authority is clearly in favor of holding the voter, on the one hand, to a strict performance of those things which the law requires of him, and on the other of relieving him from the consequence of a failure on the part of election officers to perform their duties according to the letter of the statute where such failure has not prevented a fair election.' McCrary, Elections, (4th Ed.) § 724; Davis v. Walcott, Tex.Civ. App., 96 S.W.2d 817. * * * "

On motion for rehearing a second member of the court concurred with the reasoning in the majority opinion and emphasized an expression by quoting it, to-wit: "To hold that a voter's signature on the stub is unnecessary would be to repeal the Secret Ballot Law of Texas, which the Legislature has enacted". The concurring opinion took the occasion to explore another phase of the question by demonstrating that under

the circumstances of the case the absence of signed stubs made it impossible to identify the persons casting approximately three hundred ballots found in the ballot boxes. This opinion did not by calling attention to that particular circumstance retreat from or cast doubt upon the position stated in the first majority opinion:

On appeal to the Supreme Court that tribunal in a per curiam opinion (Vicars v. Stokely, 157 Tex. 182, 300 S.W.2d 623—1957) said:

"The Court of Civil Appeals has held in this case that ballots should not be counted when the corresponding stubs do not bear the signature of the voter. 296 S.W.2d 603–604, 605–607. That holding is in conflict with the holding of the El Paso Court of Civil Appeals in Fox v. Nail, 294 S.W.2d 407, 409. On the question indicated a majority of this Court agree with the holding of the Court of Civil Appeals in the instant case."

Though the language used indicates that the per curiam opinion expresses the view of only a majority of the Supreme Court, the question must now be regarded as settled. There is but little more that may or need be said. The law requiring a voter to affix his signature to the ballot stub governs all, those who would thwart its purpose and those who would not. The electors whose votes are challenged completely failed to do the act the law required of each of them as a prerequisite to casting a valid ballot. The appellants' first point of error is overruled. Appellant's motion for new trial opposes this result as a restraint on a citizen's exercise of franchise by an unconstitutionally narrow and rigorous construction of the statute as applied to the facts of the case. In Mitchell v. Jones, 361 S.W.2d 224 (Tex.Civ.App.—Texarkana 1962, no writ), this court had occasion to say:

"The Constitution in Art. 6, Sec. 4, and Art. 16, Sec. 2, has limited the field of legislative action to legislation 'necessary to detect and punish fraud and perserve

the purity of the ballot box', and to protect the exercise of free suffrage from 'all undue influence * * * [by] power, bribery, tumult or other improper practice.'

\* \* \* \* \* \*

"It is sound policy, supported by abundant authority, that legislative acts tending to abridge the citizen's franchise will be confined to their narrowest limits by a liberal interpretation favoring the citizen's right to vote."

This legislative enactment requiring a voter to sign the ballot stub is plainly designed to implement and facilitate the detection and punishment of fraud and to preserve the purity of the ballot box, and its application in this case is well within Constitutional limits.

The Tex. Election Code Ann. art. 8.15 (1967) contains a provision saying:

"\* \* \* [s]hould the voter be unable to sign his name, *he shall place* the stub face down so as not to expose the number of his stub and he shall sign the same with an 'X' *with the election judge* placing the voter's name in the election judge's own handwriting, and the voter shall then drop the stub in the stub box before the voter deposits his ballot."

(Emphasis added.)

An elector, qualified in all respects but unable to read or write, presented himself at the polls and requested the election judge for and received assistance in preparing and casting his ballot for consolidation. When the ballot stub box was opened in court, stub No. 1057 was found marked on its reverse side with an "X" and bearing the signature of the election judge—not the name of the voter—written beneath the "X". Ballot No. 1057 corresponding with the same numbered stub was identified as that cast by the illiterate elector. Testimony was introduced that the "X" mark on the ballot stub was placed thereon by the elector. The elector himself testified that from experience in voting over a number of years he understood that he was required to place

an "X" on the stub. The trial judge ruled ballot No. 1057 valid. Point of Error No. Two presents such action for review.

■ The quotation from Vicars v. Stokely, 296 S.W.2d 599 (Tex.Civ.App. San Antonio 1956, writ ref'd, n. r. e.) reproduced above contains a statement of the rule to be applied by courts in factual situations such as this. Courts long ago settled the question, differing only in the phraseology used, by holding that whatever the law requires a voter to do himself he must do as required in order to cast a valid ballot; but that failure on the part of election officers to perform their duties prescribed by law, where such failure has not prevented a fair election, will not deprive the elector of his voting privilege or of his right to exercise it. See Davis v. Walcott, 96 S.W. 2d 817 (Tex.Civ.App.—San Antonio 1936); Thompson v. Barnes, 399 S.W.2d 399 (Tex. Civ.App. Eastland 1966, err. dism'd); City of Roma v. Gonzalez, 397 S.W.2d 943 (Tex. Civ.App. San Antonio, 1965, wr. ref'd, n. r. e.); Gayle v. Alexander, 75 S.W.2d 706 (Tex.Civ.App. Waco 1934). The elector in this instance, burdened as he was by illiteracy, did all that the law required of him. Misunderstanding of the election judge's duties and failure on the part of that election official to observe the law's precepts, did not render the elector's ballot invalid. Point of Error No. Two is overruled.

Appellees challenged the validity of ballot stub No. 654 and its corresponding ballot which was cast against consolidation. The stub was signed "D. E. Blue". Mrs. Frankie Evelyn Blue, wife of D. E. Blue, in all respects a qualified voter, signed the stub and cast the ballot. The trial judge found as a fact, "No one by the name of D. E. Blue was included on the rolls of voters for said box and D. E. Blue did not vote in said election * * *", and stated in his conclusions of law that ballot 654 was not valid "because the voter failed to affix * * * her signature to the stub". Point of Error Three presents the findings and conclusions for examination.

■ In discussing Point One it was shown on the authority of the highest court of this state that in an instance where the voter's signature on the ballot stub is required by law "Ballots should not be counted when the corresponding stub does not bear the signature of the voters". The law issue is settled, the question remaining under this point is whether or not the evidence in the record will support the judge's fact finding that Mrs. D. E. Blue did not affix her signature to the stub of her ballot. Mrs. Blue was called as a witness, and the first four questions propounded to her and her responses are set out next:

"Q. Would you state your name, please?

A. Mrs. D. E. Blue.

Q. What is your full name, Mrs. Blue?

A. Frankie Evelyn Blue.

Q. And how do you normally sign your signature?

A. I either sign it Mrs. D. E. Blue or D. E. Blue or Frankie Blue.

Q. Of course your name is not D. E. Blue?

A. No."

Other questions and other answers produced testimony explanatory and to some degree contradictory to the testimony here reproduced. In the absence of a jury the trial judge had the onerous duty of resolving conflicts and contradictions in the evidence presented. In determining the facts, the credibility of the witnesses and the weight to be attached to the testimony is left to him exclusively. See 57 Tex.Jur.2d Trial, §§ 567, 569. Here the witness stated her name was not D. E. Blue. The judge could with justice reason that if D. E. Blue was not her name, D. E. Blue was not her signature. The quoted evidence supports the trial judge's finding. Point of Error No. Three is overruled.

Under the heading "Points of Error" the appellee's brief sets out eleven points. The first three are addressed to the matters

heretofore discussed. The fourth through eleventh refer to action of the court which the appellee describes as erroneous. This last mentioned series of points will be dismissed on the appellants' motion and without discussion other than to note that the appellee did not object to the judgment entered by the trial court.

For the reasons discussed the judgment of the trial court must be affirmed. All motions for rehearing are overruled and this opinion is filed in lieu of the original filed herein June 25, 1968. It is so ordered.

DAVIS, J., disqualified.